The opinion of the Court was delivered by
Duncan J.
This was an action by the indorsee Elisha Ely, against William Hill, the indorser of certain promissory notes, indorsed in blank. The indorser offered evidence to shew the nature and condition of the indorsements; this was rejected. The evidence offered was a deposition, containing an account of the origin of the contract which gave rise to the indorsements ; the conditions on which the indorsed notes were delivered to, and accepted by the indorsee. This deposition tended to prove, that Elisha Ely agreed to receive in payment, the notes of Jabez Lamb, for the coffee sold by him to William Hill, at his own risk, and without recourse. This was the original contract; there was no antecedent debt. • ,
The notes of Jabez Lamb, were drawn in favour of William Hilli and by him handed to Elisha Ely, without indorsement. Elisha Ely then said, Hill, you must indorse these notes : to which, Hill replied, that is not our understanding. Elisha Ely rejoined, they are made payable to you; how will you convey them to me? You must indorse them in order that I may collect them. William Hill then said, I indorse them, but remember, I am not to be held responsible for the payment by this indorsement: and Elisha Ely accepted the notes on that condition.
This was not an indorsement in full, and it did not transfer the property and interest in the notes to the indorsee without a further act. It gave Elisha Ely the power of *365 constituting himself assignee of the beneficial interest, by filling them up payable to himself; but with the restriction, that it was not so to be filled up,- as to render- William Hill liable. The argument has taken a wide range, and much ingenuity has been exercised, in an endeavour to prove, that the evidence was intended to contradict a written negotiable instrument, and therefore not admissible. There cannot be a different rule of evidence in respect to commercial instruments, from that which prevails in all other cases. This, as between these parties, would be a conditional delivery by indorsement, and would amount to a restricted indorsement barely authorising the indorsee to recover the money, and prohibiting the indorser from releasing the debt, precisely operating as the assignment of a bond. It is not the case of a note negociated to a third person without notice ; but between the original parties to the contract. If these notes had been so negociated by Elisha Ely, William Hill’s mouth would be slopped; a third person could not be affected by a latent agreement. By the blank indorsement, the authority of Elisha Ely to transfer, could never have been questioned, when they came into the hands of a bona fide holder without notice.
There is no question made as to the effect of this evidence when received ; but the question raised is, as to the medium of proof. Can parol evidence be given to restrain the effect of these blank indorsements, by proof of fraud in obtaining them ; or proof that the holder of them was by this very suit perverting them to purposes not intended, but directly contrary to the intention of the parties, manifested at the time by express declaration; or by proof of a verbal condition annexed to them when made, and at the moment of delivery. Fraud in obtaining an instrument, is generally the subject of relief in equity ; in some cases, it is a bar in courts of common law. But as our Courts are constituted, wherever parol- or extrinsic evidence would be received in evidence to reach a fraud in chancery, the same evidence would be received in our courts. The relief in equity is not professedly on the ground of contradicting the writing by parol evidence, but in letting in such extrinsic evidence to raise an equity dehors the instrument, in order to contravene a purpose which no law can, or ought to protect: and it is on this principle the Courts in this State have acted, from Hurst’s lessee v. *366 Kirkbride, in 1773, cited in 1 Binn. 616, down to Christ v. Diffenbach, in 1815, 1 Serg. & Rawle, 464. Cases of trust, to prevent frauds, and correct mistakes, are among the first objects of equity jurisdiction; and to accomplish this, parol evidence is admitted; for in no other way can it be accomplished. To attain this great object of distributive justice, the same course has been pursued in our Courts, proceeding in a different course, but terminating in the same point. Established as this course is, by a consistent and uniform series of decisions for nearly half a century ; sanctioned as it stands by names of the highest authority ; whatever may be now the difference of opinion as to the propriety of some of the declarations in the full extent it is laid down in some of the cases, going perhaps further than the practice in the courts of law and equity elsewhere, it would destroy all certainty in the law itself, all security in judicial decisions, now to overthrow all this body of authority.
The evidence offered went to prove a direct fraud, in obtaining the indorsements, or their perversion to a purpose never intended; a fraudulent purpose. The contract was for the notes of Jabez Lamb, without the responsibility of William Hill. How were they obtained? By the declarations of Elisha Ely, that they were only to be made to enable him to collect the money. You must indorse them, says the indorsee, to enable me to collect. But, said the indorser, £ do indorse, but remember I am not to be held responsible for payment by my indorsement. As was said by the Chief Justice, in Christ v. Diffenbach, “ was not William Hill tricked into these indorsements ? Would such conduct be any thing more or less than a downright fraud ?” But were not these indorsements made on express condition; and is not this suit a violation of this condition, and inquirable into by parol evidence? In Field for the use of Oxley & Hancock v. Biddle, 2 Dall. 171, 1 Yeates, 138, the verbal evidence of a condition not in the obligation and destroying altogether its effect, rendering it void for every purpose, was admitted. It was a condition, that the bond should be void, unless Oxley £? Hancock sent in their ratification within six months. What were the objects of these indorsements? Solely to enable Elisha Ely to collect the money from Jabez Lamb. It was nothing else than the lending of the name of William Hill to Elisha Ely, to be used for this purpose and *367 no other. He received them in trust for this purpose alone. To raise a trust on notes indorsed between indorser and indorsee, the original parties to the indorsement, parol evidence has been received in many cases, both at law and in equity. As notes delivered to an agent to be discounted for the use of the principal, discounted for his own use, to persons having knowledge ; these have been ordered to be delivered up. This was decided in the exchequer in England, cited in Joy v. Campbell, 1 Schoales & Lefroy, 345, as the case of Ld. Verney v. Carding and others; there parol evidence was admitted, to prove the trust, and fraud. So in Ld. Bolingbroke’s case, same book, Ld. Bolingbroke delivered- notes to a person to get discounted, who carried them to a banker, who insisted on retaining the notes, and placing them to the holder’s credit, there being a balance due by him to the broker, but the broker knowing he got them for the purpose of getting them discounted for another, was obliged to account for them to Ld. Bolingbroke. So in 10 Johns. 224, Herrick v. Carman, in action by second indorsee of a promissory note against his immediate indorser, it is competent to defendant to prove that the plaintiff had given no consideration for the note, but held it merely as the agent of the payee to collect the amount, and therefore had no right to bring the suit; the suit being between the indorser and his immediate indorsee, who are, in one sense, original parties. To the same effect is Woodhull v. Holmes, 10 Johns. 231, and in 15 Johns. 274, Skelding v. Haight. The indorser may shew in an action by indorsee, that the note was indorsed by the defendant as an accommodation note, to enable the borrower to raise money on it, for that proves no value was received. In all these cases, the parol evidence was admitted, to shew that however unrestricted the indorsement might be, it was intended to be conditional, limited, and restricted. Undoubtedly as between drawer and payee, the drawer, although the notes purport to be for value received, may shew, that it was given for a consideration which failed, or on a condition which had not happened. And the second was the reason why the parol evidence was admitted, in Baring v. Shippen, 2 Binn. 166, and the bond invalidated. Dr. Cutting was admitted as a -witness, to prove, that the bond was given by Mrs. Shippen, for the sole purpose of raising money for her own use, and *368 was applied by him, not for raising- money at all, but for pay» ing his own debts. The case of Hoare and others v. Graham 3 Campb. 56, where it was decided, that in an action on a promissory note or bill of exchange,. evidence cannot be given of. a parol agreement when it was drawn, that it should be renewed and payment should not be demanded when it became due, is much relied on by the defendant in error. That case is altogether different from the present. There was no allegation of fraud. It was considered as a mere gratuitous conversation respecting a renewal, which rested in honour and confidence only, and being without consideration could not be enforced in law. But it is there decided, that evidence would be received, that the note was indorsed to the plaintiff as trustee. And in the same book, p. 376, by the same Judge, (Lord Ellenborough,) that if a check is given on a verbal condition, which the drawer finds to be broken or eluded, he has a right to stop payment. If I give a draft upon a condition, and I find the condition is to be eluded, I may stop payment, for the delivery was conditional. The check was absolute in its terms ; equally so, at least, with a blank indorsement; but it was conditionally delivered. These indorsements were so emphatically: “ remember I am not to be made responsible for the payment by these indorsements.” The indorsements were made and delivered for one purpose ; they are fraudulently attempted to be converted to another.
I am of opinion, without reluctance, and without hesitation, that under the head of trust and fraud, the evidence was improperly rejected. If believed, it shewed the character in'which the holder of the note stood, not as indorsee with a full-indorsement, but with a blank indorsement which he had no authority to fill up with a full indorsement, so as to render the indorser liable for payment or to be resorted to on account of the insolvency of the drawer. It would be a breach of confidence reposed in him ; a violation of good faith. This was a fraud which in the hands of any holder to whom they had been passed with notice would subject him to the restriction upon which they had been received; much less could Elisha Ely make any writing on the blank indorsement, which would render William Sill liable. The conditional delivery, the-trust on which they had been received, were facts, which even in Courts of law, proceeding on *369 tbe most rigid principles with respect to parol evidence to impeach a written instrument, were susceptible of the only medium of proof, of which they were capable, unwritten evidence. The equitable relief is granted in equity even on agreements respecting land, where the jurisdiction of equity notwithstanding the positive words of the statute of frauds and perjuries is not affected. Parol evidence is received, not as a variation of the agreement, but explanatory of what it was meant to be, but which it is not by omission of the scrivener in fraud of the party, as that an absolute instrument was intended as a mortgage. Pow. on Mortg. 64, 65. And the allowing any other construction, would be to make the statute a guard and protection to fraud, instead of a security against it.
Here it is not to contradict any written instrument, but to prevent the party from making use of blank indorsements with which he was entrusted, contrary to his assignment when he received it, directly in contradiction of the trust; and as parol evidence in an action between drawer and payee of fraud or want of consideration to impeach a note, is constantly received, the same evidence may be given to impeach an indorsement between the indorser and the indorsee. The act of indorsing is similar to that of drawing; confers the same right; imposes the same obligation on the indorser and the indorsee. Chitty on Bills, 122. The indorsers stand in the same relation to each other; and the mode in which the obligation by the holder’s laches or otherwise may be extinguished, is in all cases the same as that, which a drawer of a bill is under to the payee. In every view of this subject, the evidence ought to have been received, and there was error in rejecting it.
Judgment reversed, and a venire facias de novo awarded.