## Morrison *against* Morrison.

Though the terms of a sale of land by auction were in writing, and the bonds for the purchase-money were executed in pursuance of them, yet in an action upon such bond it is competent for the defendant to prove that the written terms were altered by parol, and that the parties agreed when the bond was given, that upon the happening of a certain event the bond was not to become payable at the time expressed in it.

ERROR to the Common Pleas of *Washington* county.

James Gracey, trustee of the estate of James Morrison, deceased, against James Morrison and George Morrison. This case is fully stated in the opinion of this court.

*Gow* and *Brady,* for the plaintiffs in error, cited 2 *P. R.* 214; 1 *H. Bl.* 218; 5 *Car. & P.* 48; 15 *Vez.* 518; 16 *Serg. & Rawle* 424.

*M'Kennan,* contra, cited 2 *Phil. Ev.* 722; 14 *Serg. & Rawle* 311; 1 *Ib.* 464; 10 *Ib.* 290; 5 *Ib.* 363.

[Morrison v. Morrison.]

The opinion of the Court was delivered by

Huston, J.—This cause was assumpsit on a note given by James and George Morrison, under the following circumstances: James Morrison, the elder, having died, his estate was appraised, and none of the heirs electing to take it, was sold by order of the Orphans' Court. The amount of the widow's third was $854.33, for which the note in question was given, as follows:

"We, James Morrison and George Morrison, do hereby acknowledge to owe to David Miller, trustee appointed by the Orphans' Court of Washington county, for the estate of James Morrison, deceased, the sum of $854.33, being the one-third or widow's dower of the said real estate; and we hereby engage to pay the same according to the terms of sale of said estate; and we further engage to pay annually, on the 1st April, to Phœbe Morrison, widow of said deceased, or her order, the interest of said $854.33." This was dated 18th Dec. 1839, and signed by the defendants below.

The plaintiff then gave in evidence the following terms of sale:

" The highest bidder to be the purchaser on the following terms, viz: The one-third of the purchase money to remain in the hands of the purchaser during the lifetime of the widow, the interest thereof to be paid to her annually on the 1st of April. Fifty dollars to be paid in cash, and one-half of the balance of the purchase money to be paid on 1st April 1840, and the balance in two equal annual payments on 1st April 1841, and the second on the 1st April 1842. The widow's dower to be paid in two equal payments: the first on 1st April next succeeding her decease, and the second in one year from the first payment, (provided that if the widow die before the time of the payment of the last of the other payments, the interest on the dower to cease until the time of the first payment of the dower becomes due, then to continue until paid); possession to be given on the 1st April next."

The plaintiff then proved the death of David Miller, the trustee, and appointment of Gracey in his stead, and the death of the widow on the 22d Nov. 1840.

The defendants then offered to prove by William Simcox (who was the crier of the sale) and others, that the terms were read and the sale proceeded for a while and the bidding ceased; and an objection was raised that should the widow die before the other payments became due, the dower coming along with the last payments would make them too heavy. The trustee, Esquire Miller, then explained the matter, and caused to be proclaimed by outcry, that should the widow die before the last of the other payments is due, the interest on the dower to cease, and the first payment of dower not to become due until the 1st April, one year after the last of the other payments is due; that is, the purchaser to have four annual payments after possession. This testimony was objected to and rejected, and a bill of exceptions.

[Morrison v. Morrison.]

The defendants then offered to prove that on the 18th December 1839, and before the notes were executed, Miller stated the terms of sale to be the same as contained in the foregoing offer; that this statement was made to the defendants and for their information. This also was objected to and rejected, and another bill of exception. The errors assigned were these two bills of exceptions.

Every honest man, in making a purchase, is careful to have his payments so arranged as that in the ordinary course of affairs, he can meet them as they fall due; and it often happens that where the price is agreed on, the sale is broken off because he who proposes to purchase is not willing to bind himself to make payments beyond what he supposes to be in his power. In this case all bidding had ceased. The apparent difficulty is obviated by a change of terms, and a higher price is obtained. To enforce the payment of that higher price, and the payment at an earlier day than was expressly agreed on, would not be honest in the seller, and a fraud and injustice to the buyer.

The question when and how far parol evidence will be admitted to explain and modify written agreements, has been much discussed, and what has been once disputed may be disputed again, and continue so till time shall be no more. In some countries one or two or three decisions of the highest court ends the dispute, but it is too often otherwise. The decisions of other courts, in other countries, are relied on, and sometimes they are not wiser than our own. Although in this country almost every one can write, yet few will undertake to write a specific contract out of the ordinary terms—and fewer still can write it so as to preclude dispute; but men can understand each other, and as long as bargains are made will confide in promises and agreements never reduced to writing. I have had some experience, and compared calculations with those who have had much more, and I believe that more than ninety-nine out of an hundred contracts made, are never disputed. I mean the terms and meaning of the contract is never denied by either party, unless, after from inability to comply, one is sued.

In *Ashcom* v. *Smith*, (2 *P. R.* 211), this court decided that where the written or printed terms of a sale are ambiguous or objectionable, the seller may alter his terms during the progress of a sale by auction. It was decided in *Christ* v. *Diffenbach*, (1 *Serg. & Rawle* 464), that what was said and agreed to at the time of the contract and of reducing it to writing might be proved by parol, though omitted in the writing. In 5 *Serg. & Rawle* 363, the endorsement of a promissory note (not negotiated) was held not to bind the endorser, because it was proved such was the understanding of the parties, and that it was done solely to enable the endorsee to sue in his own name, if suit became necessary. In 10 *Serg. & Rawle* 296, Tilghman, C. J. says, it has been so often decided that it is now settled, that what is said at the execution

[Morrison v. Morrison.]          -

of the writing may be proved by parol, if denied by the party who got advantage by it. But it required more cases to settle it. In *Frederick* v. *Campbell*, (13 *Serg. & Rawle* 136), on a sale of land, it was agreed that the land should be measured and paid for at $20 per acre; but omitted to be put in the written agreement. When the purchaser came to make his first payment and get his deed, the vendor, who had promised to have a survey made, had omitted to do it, and had a deed drawn and signed for 225 acres. The purchaser hesitated, and the vendor called witnesses that if the quantity fell short he would allow for it, and the deed was accepted and bonds given for 225 acres. On measurement it was only 200 acres, and the vendor lost the amount out of his bonds. So in *Overton* v. *Tracey*, (14 *Serg. & Rawle* 311); *Bollinger* v. *Eckert*, (16 *Serg. & Rawle* 424), and *Jones* v. *Patterson*, (1 *Watts & Serg.* 321), and many other cases.

It may be supposed that if David Miller had lived this dispute would not have arisen, and that the succeeding trustee was advised he must be governed by the papers. But the justice and truth of the case require that the heirs of the deceased should not obtain a higher price by offering certain terms, and then refuse to comply with those terms.

Judgment reversed, and a *venire de novo* awarded.