Allen, P.
It was said by the court in the Countess of Rutland's Case, 5 Coke’s R. 25, “ that it would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth and agreement of the parties, should be controlled by an averment of parties, to be proved by the uncertain testimony of slippery memory.” In Stevens v. Cooper, 1 John. Ch. R. 425, Chancellor Kent remarks, “ that there is no rule of evidence better settled than that which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement. Such testimony is not only contrary to the statute of frauds, but to the maxims of the common law; and the rules of evidence on this as on most other points, are the same in courts of law and of equity.” See Fell v. Chamberlain, 2 Dick. R. 484; Woollam v. Hearn, 7 Ves. R. 211; Jordan v. Sawkins, 3 Bro. C. C. 388. In Crawford v. Jarrett, 2 Leigh 630, Green, J. states the rule in these words: “Parol evidence cannot be admitted (unless in case of fraud or mistake) to vary, contradict, add to or explain the terms of a written agreement, by proving that the agreement of the parties was different from what it appears by the writing to have been.” In Watson v. Hurt, 6 Gratt. 633, 644, Judge Baldwin announces the rule in the following terms: “It is perfectly well settled that the terms of a written con *711 tract cannot be varied by parol evidence of what occurred between the parties previously thereto or cotemporaneously therewith.” In 1 Greenl. Evi. § 275, the author observes that the ruth- as now briefly ex-, pressed is, “that parol cotemporaneons evidence is inadmissible to contradict or vary the terms of a valid written instrument.” The rule thus announced as a rule of the common law at so early a day has been uniformly adhered to by the courts both of England and this country ever since; but in the application of it to different instruments, difficulties have arisen. Courts, while laying down the rule as unquestioned and unquestionable, and professing to recognize its wisdom and binding authority, have drawn distinctions to take particular cases of apparent hardship from without its operation, which at first view would seem to violate the rule itself. An examination of the cases, however, I think, will show that no case has been decided in which such oral evidence has been received to engraft upon, or incorporate with, the contract an incident occurring cotemporaneously therewith, and inconsistent with its terms.
Thus, in Crawford v. Jarrett, 2 Leigh 630, it was held that in cases of equivocal written instruments, the circumstances under which they were made may be let in to explain their meaning; and in that case parol evidence of the time and manner of the execution and delivery of the written promise was admitted to show, that a party who had signed but whose name was not in the body of the instrument, was jointly bound with those named. There no new words were added to the instrument. The proof was consistent with the terms of the instrument, and the only effect of the oral evidence was to enable the court to read the writing by the light of surrounding circumstances, that it might ascertain the meaning of the parties.
So in Wigglesworth v. Dallison, Doug. R. 201, it *712 was decided that a custom that a tenant, whether by Par°i or deed, shall have the way going crop at the end of the term, is good if not repugnant to the £erms 0f £]ie }ease; Lord Mansfield observing that the custom <3i¿ not alter or contradict the lease, but only added something to it. Perhaps a more satisfactory reason for not applying the rule to such a contract is given by Parke, B. in Hutton v. Warren, 1 Mees. & Welsb. 466, that such evidence is let in upon the principle of presumption that the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but to contract with reference to the known usage. He doubted the wisdom of the relaxation of the common law rule, but as between landlord and tenant it had been too long settled by authority to change the practice.
So with reference to commercial transactions, proof of usage is admitted either to interpret the meaning of the language of the contract, or to ascertain its extent, in the absence of express stipulations, or where the language is obscure. As where a promissory notéis payable with grace, evidence of the established and known usage of the bank where it is payable, is admissible to show on what day the grace expired. Renner v. Bank of Columbia, 9 Wheat. R. 581. Oral evidence is also admitted to prove that a person who signed as principal was in reality an agent, when offered for the purpose of charging the principal with the contract: Upon the ground we are told in 2 Smith’s Leading Cases 307, of assimilating this case of a dormant principal, to that of a dormant partner. The latter is liable on the ground of agency, and if they trade under the name of A, that name when used in a contract relating to such trade, comprehends both. And if one may contract jointly with another in the name of that other, he may contract individually in the same way; and parol evidence is admis *713 sible to show the agent so contracted for him. It is not to contradict or change the terms of the written contract, but to show the import of the signature.
So where oral evidence is admitted to show in an action on a promissory note acknowledged to be for value received, a want of consideration for the promise, or that the instrument was void by reason of fraud or illegality, these may bé proved as distinct independent facts collateral to the contract, but not tending to vary or contradict the terms of it. Nor, as it seems, does the rule apply where the contract was reciprocal, and the part applicable to one party only has been reduced to writing. Of this class was the case of Brent v. Richards, 2 G-ratt. 539. That was a parol contract for the sale of a slave at a reduced price, with a condition if the purchaser desired to sell, the seller should have him at the price he received. The vendor executed a bill of sale which was silent as to the condition to repurchase. The purchaser afterwards sold to a stranger at a higher price. In a suit by the seller against the purchaser this court held, that the deed was not an estoppel in evidence of any matter not inconsistent with and contradictory of it. That the deed was merely the execution of the contract on the part of the vendor, and put the property in the condition in which the contract sued on began to operate.
So oral evidence of a subsequent contract varying the terms of a previous contract on a new consideration, or of a discharge thereof, does not contradict or change the terms of the contract, but establishes independent facts, to avoid the effect of it.
And so in the cases relied on where a court of equity is called upon to exercise its peculiar jurisdiction, by decreeing a specific performance, the party to be charged is permitted to show by oral testimony, that under the circumstances the plaintiff is not entitled to *714 have the agreement enforced. Woollam v. Hearn, 7 Ves. R. 211; Clark v. Grant, 14 Ves. R. 519; Ramsbottom v. Gosden, 1 Ves. & Beame 165. And this because parol evidence may be received to rebut an equity, and specific performance is not decreed ex debito justitice, but rests in discretion.
And so with respect to such evidence to prove an attempt to convert info an absolute sale that which was intended as a security for a loan; it is the fraudulent attempt of the grantee, and perhaps on the ground of a resulting trust in favor of the grantor, that such evidence is received.* The latter is proba *715 bly the true reason for the relaxation of the rule in this instance. To let in oral evidence to prove that the parties intended a deed to be a mortgage which purports on its face to be absolute, is to establish a different agreement by parol testimony, in the violation of which the fraud consists. Unless this case be an exception to the general rule, I can find no case which determines that oral cotemporaneous evidence is admissible to contradict the terms of a written agreement, or substantially vary the legal import thereof, provided the instrument was a valid instrument, and the party designed to execute it in its existing form. The fraud which will let in such proof, *716 must be fraud in the procurement of the instrument, which goes to its validity, or some breach of confidence in using a paper delivered for one purpose and fraudulently perverting it to another. In such cases the oral evidence tends to prove independent facts, which if established avoid the effect of the written agreement by facts dehors the instrument, but do not tend to contradict or vary it.
It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee cotemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For- reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement' itself in legal contemplation, cannot be regarded as existing in fact. Neither a court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it. Thus although for the reasons given, parol evidence that a person who signed as principal was in truth an agent, is admissible when offered for the purpose of charging the principal with the contract ; such evidence can never be received for the purpose of exonerating an agent who has entered into a written contract in which he appears as principal; for such evidence would alter the written contract. Higgins v. Senior, 8 Mees. & Welsb. 834; Hunt v. Adams, 7 Mass. R. 518; Stackpole v. Arnold, 11 Mass. R. 27. Numerous examples of the cases in which *717 such evidence has been rejected may be found referred to in 1 Greenl. Evi. § 281. Amongst the cases cited are some deciding, that where the instrument purported to be an absolute engagement to pay at a specified day, parol evidence of an oral agreement at the same time, that the payment should be prolonged, or depend upon a contingency, or be made out of a particular fund, is inadmissible. The case of Watson v. Hurt, 6 Gratt. 633, is a striking instance of the application of the rule. There a promissory note to the plaintiff, payable on demand, was endorsed by a ■stranger which entitled the plaintiff to fill up the blank endorsement with a guarantee by the defendant for the payment of the money according to the terms of the note. As the note was payable on demand, an action on it was barred by the statute of limitations. But the making of the note and the endorsement were ootemporaneous acts, part of the same transaction, and this court decided that it was inadmissible to show by oral testimony a parol agreement at the time of the execution of the note by the principal and endorsement by the guarantor, that the note instead of being payable on demand and absolutely, was payable only conditionally upon the happening of a future event. That such evidence would have been inadmissible as against the maker and much more so as against the guarantor. And the consequence was the defeat of the action by the statute of limitations in contravention and fraud of the ootemporaneous parol agreement, provided there could have been any legal proof of the existence of such agreement.
Cases have been cited from 5th and 14th Sergeant and Rawle’s Reports, establishing a different principle, as it has been argued, and they have been much relied upon. An examination of the cases satisfies me that the court did not intend to come in conflict with the general rule, which was expressly recognized, but sup *718 posed the facts of the cases withdrew them from its operation. In the case of Hill v. Ely, 5 Serg. & Rawle 363, notes were delivered to the plaintiff by the defendant in payment of goods purchased at the time of giving the notes; the notes were endorsed by the defendant, who being sued as endorser was permitted-to prove by oral testimony, that at the time of the endorsements it was expressly agreed that the defendant was not to be held responsible as endorser for the payment of the notes, but that the endorsement was made for the purpose of enabling the plaintiff to collect the money from- the maker. The court held' that the endorsee stood not as an endorsee with a full endorsement, but with a blank endorsement, which he had no authority to fill up with a full endorsement so as to render the endorser liable for payment; that the endorsement being made merely to enable the plaintiff to collect the notes, he received them in trust for this purpose alone; and the case was held to fall within the principle of cases deciding that notes delivered to an agent to be discounted for the use of the principal, discounted for his own use to persons having knowledge, should be delivered up, and other cases deciding, as between parties to negotiable paper, that no consideration or fraud may be shown. Of this case it .may be remarked that the mere endorsement did not pass title; it was the contract of which the endorsement was the evidence. And the contract being conditional, made with one intent, it was a fraudulent perversion of it to use it for another purpose. _ The evidence did not contradict but was let in to show what were the terms of -the contract, and when filled up actually or by supposition, it was a qualified endorsement.
In the case of Heagy v. Umberger, 10 Serg. & Rawle 389, the opinion was delivered by the same learned judge who-delivered the opinion of the court in Hill v. Ely. It was an action against the assignor for the *719 insolvency of the maker. The assignment showed no guarantee of solvency, but the contrary was expressed. Duncan, judge, observed that the courts had gone far enough in admitting parol evidence where the contract was in writing; that where there was no fraud alleged, or mistake, or omission by the scrivener, and the writing expressly excluded all guarantee of the solvency of the maker, to admit parol evidence to contradict it, would be contrary to every rule of law, and would render all writings worse than useless; that whatever is reduced to writing, that is to be considered as the evidence of the agreement, and every thing resting in parol becomes thereby extinguished.
In the case of Lyon v. Huntingdon Bank, 14 Serg. & Rawle 283, the bank agreed to loan upon the credit solely of certain bonds, but in compliance with the rules of the bank required a note with an endorser for form sake to be put in, and assured the party that the note was a mere matter of form without responsibility on the signers. Tilghman, Ch. J. said that where there is an agreement in writing, parol evidence of the same agreement is inadmissible, but the evidence offered did not fall within the rule. It was not pretended that any thing was wrong in the note or that any alteration whatever should be made in it, In point of fact it was never executed and made as an effective operative security, to bind the parties. It was a matter of form required by the officers to show a compliance on their part with the rules of the bank, and it was a fraud to attempt to set it up as a valid security. It was evidence of independent facts to avoid the effect of what,purported to be a valid security, but not to contradict or vary the terms of it. How far the distinction taken was well founded might be a question; the case was de *720 cided because the court considered it did not come within the influence of the general rule.
With this view of some of the authorities in regard to the application of the rule of evidence, it remains to enquire whether by the case as made by the bill the appellee seeks relief by oral evidence of an agreement additional to, but consistent with, the terms of the written agreement, or by proof of fraud in the procurement thereof, or of a breach of confidence in perverting what was delivered conditionally or diverso intuitu, and using it as a valid instrument; or by proof of any mistake or omission and a fraudulent attempt to take advantage thereof.
The bill alleges the recovery of a judgment by the appellant against the appellee’s testator Edward Lucas, in the Circuit court of Jefferson county on three single bills executed by George Reynolds, Jacob W. Reynolds, J. McMurran, C. Billmyer and the said Lucas. That these papers were given for a previous debt due by the two Reynoldses the principals, and that before they were signed, it was understood and agreed between the two principals and their three friends McMurran, Billmyer and Lucas, that all were to sign or none would be bound. That subsequently the said notes were prepared by J. W. Reynolds, and after they were signed by G. Reynolds, J. W. Reynolds, McMurran and Billmyer, and before their delivery to the appellant, they were presented to the appellee’s testator, who refused to sign them, in consequence of consultation with his friends, and learning the extent of his previous liabilities for said Reynolds greatly exceeding those of the other parties. That nevertheless the appellant contrived to get possession of the bonds, without thesignature-of the appellee’s testator, and applied himself to the appellee’s testator for his signature, who again and repeatedly refused to sign the bond until *721 some eight months after they had been in possession of the appellant, when being in the appellant’s store, the latter again urged him to affix his signature, alleging that Billmyer was talking disrespectfully of Captain Reynolds, and injuring the appellant’s credit; that he wished to stop Billmyer’s mouth, and pledged his honor that if the appellee’s testator would sign the bonds, he should never be required to pay any part of the debt, and that he would give the appellee’s testator his written indemnity so as to save him harmless. That not being a lawyer and entirely ignorant of the legal consequences to others of the delivery without his signature, unapprized that by signing the bonds he might possibly jeopardize his friends, but ignorantly supposing that the appellant having got possession of the bonds with the signature of the others, they were already bound, and that therefore the addition of his name would not affect them, he permitted himself to be overcome by the importunities and representations of the appellant as to. his credit, and signed the said bonds upon his said promise of indemnity.
The bill further avers that as the bonds became due the appellant put them in suit, and that still relying on the appellant’s promise, no plea was put in by the appellee’s testator, and judgment went against him by default. That the principals were bankrupt, and that the other defendants McMurran and Billmyer put in pleas of non est factum, and were discharged.
It is further averred in the bill that after the suit was brought upon the first bond, the appellee’s testator applied to the appellant for the indemnity he had promised as the condition of his signing, and the appellant advised him to keep quiet and wait a while; that afterwards he called again in company with his son, and demanded the promised indemnity, and was assured by the appellant that he would fulfill his promise, but that he would not commit himself, and that *722 the appellee’s testator had nothing to fear but his death. The bill concludes with a prayer to require the appellant to comply with his promise to execute and deliver a proper indemnity and release from the said judgments, for an injunction, and for general relief.
To this bill the appellant demurred. The rule of evidence which excludes parol evidence tending to vary or contradict the terms of a written agreement is the same in equity as at common law. And the question is presented whether parol evidence tending to prove the oral contract set up in the bill would not vary or contradict the bonds executed by the obligor. No fraud is alleged in the procurement of the bonds; it is not averred 'that the appellant was apprised of the alleged understanding and agreement that all were to sign or none; the consideration of the bonds was a previous debt, and it is not pretended that they were not executed and delivered as valid securities.
What does the bond import? That the obligor binds himself to pay the money at a certain day j and the law, with reference to which the parties contracted, declares that he may be compelled to pay. If the bond or writing contained on its face and as part of the instrument a clause providing that payment should never be demanded or enforced, such stipulation would go to the whole obligation, and it would possess no validity. Without a provision of that kind, it is an obligation to pay which the obligee could enforce; with such a stipulation it is utterly worthless. The writing is but evidence of the agreement, and if it can be established and set up by oral evidence, the agreement when once proved must have the same effect. It shows that that which from the face of the instrument would appear to have been intended as a valid security, was. by an agreement cotemporaneous with its execution, designed to be of no *723 validity as an obligation. The promise alleged is, that he should never be required to pay any part of the debt, and that he would give his written indemnity so as to save him harmless, and that he signed upon his said promise of indemnity. Treating it as equivalent to a promise not to sue, or a promise to save him harmless, it could, if in writing under seal, have been relied on as a release or defeasance, and would in effect have discharged the obligor from the obligation of his bond. The case as made by the bill cannot be brought within the principle of any of the cases withdrawn from the operation of the rule of evidence under consideration, unless it be that class where the original contract was verbal and entire, and part only of it was reduced to writing. But in this case there was no such verbal contract with the appellee’s testator ; his contract as set forth, was to be manifested by his signature to the bond. No consideration passed to him, no contract bound him, upon which an action could have been maintained until he executed the bond. His liability and the extent of it rests upon the bond alone. The case therefore wants an essential constituent of the cases under this head, relied upon in argument. The hirer of a slave agrees to pay a certain price, and to employ him in a certain manner. The contract is oral and complete without writing, and an action could be maintained for a breach. The execution of a note for the price would not extinguish so much of the contract as related to the mode of employment. In this class of cases too, the oral evidence does not vary, contradict or in any way affect the written instrument; it consists with it; and by admitting the evidence of the additional matter, full effect is given to the entire parol contract. The case of Brent v. Richards, 2 Grratt. 539, was decided on a principle somewhat analogous. But the case as made by the bill in this case, fails in both respects. There *724 was no such entire original parol agreement upon ' which an action could have been maintained if no ■ bond had been executed; and the proof, instead of consisting with the writing, leaving it to operate fully-according to its terms, abrogates and utterly avoids it.
The case cannot be brought under any head of fraud, except by proof of the cotemporaneous agreement inconsistent with the written instrument; and, for the reasons already given, no proof of that kind can legitimately be received. No such agreement in legal contemplation exists, and no fraud can be imputed to the obligee for insisting on the terms of his bond. If it be averred, that although a note is on its face payable on demand and unconditionally, there was a cotemporaneous oral agreement, that the time for payment, should be postponed, or required only upon the happening of a certain contingency, parol evidence of such an agreement is inadmissible. Mosely v. Hanford, 21 Eng. C. L. R. 156; Free v. Hawkins, 8 Taunt. R. 92 ; Hanson's trustees v. Stetson, 5 Pick. R. 506; Spring v. Lovett, 11 Pick. R. 417 ; Watson v. Hurt, 6 Gratt. 633. Yet it might be argued with the same force, that this oral agreement may have induced the party to sign the note, and that it is a gross fraud to attempt to enforce it according to its terms. And so it would be if the existence of the agreement could be judicially established. But there being no legal proof of it, there is nothing of which fraud can be affirmed. The rule is founded in wisdom, and a different principle would weaken confidence in all securities for debts. Matters in writing, instead of finally importing the certain truth and agreement of the parties, would be a snare and delusion. The party relying on an instrument in writing as the final result in which all previous negotiations have centred, would be met and “ controlled by an averment to be proved by the uncertain testimony of slippery memory.” The principle of the de *725 cisión in Watson v. Hurt, and the other cases referred to, would seem to be decisive against the pretensions of the testator of the appellee. As no evidence of the cotemporaneous agreement set out would have been legitimate, the bill, which is a bill for relief in equity, stating a case of which there can be no legal proof, shows no ground for relief, and the demurrer should have been sustained. If we look' beyond the bill to the pleadings and proof, the answer expressly denies the alleged promise relied on, and there was nothing but oral evidence tending to establish it. Instead of directing an issue, the case should have been dismissed at the hearing. The application of the rule of evidence referred to removes from under the case of the appellee the ground on which it rests; being incurably defective, no amendment could help him.
I think the decree should be reversed, and a decree entered dismissing the bill.
The other judges concurred in tlie opinion of Allen, P.
Decree reversed.

 Note by the Judge. — In Russell v. Southard 8? ais. 12 How. U. S. E. 139, the question was, Whether the deed was a mortgage or conditional sale 1
Curtis, J. delivered the opinion of the court. “ It is insisted on behalf of the defendants, that this question is to be determined by inspection of the written papers alone, oral evidence not being admissible to contradict, vary or add to their contents. But we have no doubt extraneous evidence is admissible to inform the court of every material fact known to the parties when the deed and memorandum were executed. This is clear both upon principle and authority. To insist on what was really a mortgage, as a sale, is in equity a fraud, which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be.” He refers to Conway v. Alexander, 7 Cranch 238. Then he says, “ And in Nixon v. Rose, 1 How. U. S. R. 126, it is stated, the charge against Nixon is, substantially, a fraudulent attempt to convert that into an absolute sale which was originally meant to be a security for a loan. It is in this view of the case that the evidence is admitted to ascertain the truth of the transaction, though the deed be absolute on its face.”
“These views are supported by many authorities.” And he cites a number.
After stating that if the courts of Kentucky had decided differently, the Supreme court w’ould not be controlled by them, he proceeds: “ But we do not perceive that the rule held in Kentucky differs from that above laid down. That rule, as stated in Thomas v. McCormack, 9 Dana 109, is that oral evidence is not admissible in opposition to the legal import of the deed and the positive denial in the answer, unless a foundation for such evidence had been first laid by an allegation and some proof of fraud or mistake in the execution of the conveyance, or some vice in the consideration.
“ But (the judge continues) the enquiry still remains what amounts *715 to an allegation of fraud or some vice in the consideration: and it is the doctrine of this court, that when a loan on security was intended, and the defendant sets up the loan as the payment of purchase money, and a conveyance as a sale, both fraud and vice in the consideration are sufficiently averred and proved' to require a court of equity to hold the transaction to be a mortgage.”
The opinion of the court in the case referred to from Kentucky, of Thomas v. McCormack, is free from doubt as to what was meant by the phrase “of the allegation and proof of fraud or mistake in the execution of the conveyance or vice in the consideration.” In a subsequent paragraph, the chief justice says, “ In this case there is neither allegation nor proof of either fraud or mistake in the execution of the deed, nor is there any suggestion of an illegal or immoral consideration. On the contrary, there can be no doubt the grantor intended the deed to be absolute on its face when he signed it; and that the grantee was guilty of no fraud in procuring such a deed; and that the consideration for it was valuable and legal.” Thus showing the fraud referred to. was fraud in the procurement or execution of the deed, or the consideration was vicious because immoral or illegal; and therefore such proof was not in opposition to the legal import of the deed, but on the contrary was proof of a matter collateral to it and impairing its validity as a deed. In Floyd, v. Harrison, 2 Bob. B. 161, 175, the question was alluded to by Judge Baldwin, who remarked in substance, that such extrinsic evidence may be received when it may be fairly referred to fraud, accident or mistake. But he does not say distinctly whether the fraud should relate to the execution of the deed; or whether it could be established by evidence of a cotemporaneous oral agreement varying the import of a valid instrument which the party knew to be an absolute deed when he executed it. The illustrations which he gives relate chiefly to the execution of the instrument.