Staples, J.
This is an appeal from a decree of the Circuit court of Frederick county in a suit wherein the appellees were complainants and the appellant, Sangs-ton, was defendant. The history of the transactions in which this controversy originated, very briefly stated, is as follows:
*763 In the month of October 1865, the appellees purchased from the Baltimore Agricultural Aid Society a steam saw-mill, with its fixtures and appurtenances, at the price, in rouud numbers, of four thousand dollars, for which they executed their bonds payable to L. Sangston, “ Secretary of the Baltimore Agricultural Aid Society.” To secure the payment of these bonds, the appellees, in January 1866, conveyed in trust the said saw mill, with all its fixtures and appurtenances, and also certain real and personal estate. Default being made in the payment of the debt, the trustee was instructed by Sangs-ton to make sale of the mill. The appellees applied for and obtained an injunction to this sale, which was after-wards perpetuated by a decree of the said Circuit court. It is from this decree an appeal was taken to this court.
Various grounds have been urged by the appellee against the deed of trust and the proposed sale under it, which will be briefly considered.
It is objected, first, that as Sangston was elected corresponding secretary for one year only, and as his term of office had expired when the sale was directed, he was not then authorized to enforce the collection of this debt. Sangston, both in his answer and in his deposition, states that he was elected secretary at the organization of the society ; and that he has ever since held the office without interruption. There is nothing in the record contradicting or tending to contradict this statement ; and we must therefore regard it as true. By a resolution of the board of directors of the 1st July 1866, he, Sangston, was authorized to collect the debts due the society. Under that resolution he took possession of its bonds and notes, and has been ever since engaged in collecting the same, without objection from the society or any of its members. As before stated, the bonds are payable to “L. Sangston, secretary of Baltimore Agricultural Aid Society ” ; the deed recites that the appellees are indebted to him the amount of these *764 bonds, and that the property is conveyed to secure their payment to him. This form of security was no doubt a^°P*ed *° enable him to sue for and collect the debts due the society, without the expense and inconvenience of his bringing before the courts the numerous parties in*eresí:ec* *n proceeds of sale. It is clear that the legal interest in these bonds is vested in Sangston alone. Upon well settled principles the descriptive words used in the instruments may be rejected, and suits at law or in equity may be maintained thereon in his name, without the addition of other parties. Porter v. Nekervis, 4 Rand. 359 ; Clarksons v. Doddridge & al., 14 Gratt. 42 ; Sangston v. Coffman, 21 Gratt., 263.
It is next objected that Sangston, in taking the deed of trust, acted without instructions or authority from the society. The doctrine of ultra vires relied on in support of this proposition, has no application to the case. That doctrine only applies when the principal is sought to be charged with the unauthorized act of an agent, and not where a debtor has given a security to the agent for the benefit of the principal. The appellees had the right to secure the payment of the debt they had contracted. The society, though not expressly authorizing the act in the first instance, might at any time ratify it, and claim the beuefit of the security thus given. It will be presumed to have done so until some distinct disavowal is made to appear. Nothing of the kind is shown in this case. And it could never be endured that in a controversy between appellees and the agent alone, the principal should be deprived of thi3 only security for his debt, without evidence of his dissent, and without even an opportunity of being heard.
Having disposed of these preliminary objections, I come now to consider very briefly, the main question in the case. It is insisted, that a sale of the property conveyed in trust, would be a fraud upon the appellees ; *765 that they purchased the steam saw mill with the express understanding that it was only to be paid for out of the profits, if any, realized from the mill itself; that the deed was given at the suggestion of Sangston, because one of the persons associated with the appellees—a man of large experience and influence in the county—had withdrawn from the adventure ; and the real and indeed sole object of the deed was to furnish the secretary, Sangston, some security against the claims of other creditors and purchasers. This is substantially the ground upon which it is sought to arrest the sale by the trustee. If successful, the effect will be to vacate the bonds and deed for all practical purposes. The bonds on their face are payable absolutely. It is proposed to show, by pai’ol evidence, they were only to be paid out of the profits of the mill, if any were realized. The deed provides, that if the bonds are not paid at maturity, the property therein conveyed shall be sold. It is proposed to show, by parol, that the property was not to be sold under any circumstances. And thus it is to be made to appear, that an instrument of writing which on its face was intended as a valid security is, in fact, no security at all. No argument is necessary to show that this is an attempt to contradict or vary the express terms of a written agreement by proof of a prior or cotemporaneous parol agreement. The admission of such evidence as a foundation of relief in any court, violates the best established principles of the common law. When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, it is conclusively presumed that their whole engagement, the extent and manner of their undertaking, are embodied in the instrument. The cases of Towner v. Lucas, 13 Gratt. 705; Woodward, Baldwin & Co. v. Foster, 18 Gratt. 200; afiirm these principles, and are decisive against the pretensions of the appellees.
This is the aspect of the case when considered with *766 reference to the conclusive effect of the written contracts. If, however, we go farther, and give due weight to all the evidence adduced by the appellees, I do not perceive the-result would be different. It will be observed, that the appellees do not pretend there was any special contract ór understanding between them and the society, or its agents, by which the steam saw mill was not to be paid for, unless out of the profits realized. They aver that such was their understanding, derived from various newspaper publications and the pamphlets of the society, ■one of which is filed with the bill. "What these newspaper publications were, does not appear; as they are no part of the record. The pamphlets filed with the bill show that the main purpose of the society was the distribution of agricultural and farming implements, tools, seed and stock; to be paid for out of the first crops,- or as soon thereafter as possible.
It is clear, that the general scope and design of the society did not extend to the sale or donation of steam saw mills and articles of like character. This could not have been done without seriously diminishing the resources of the society and impairing its capacity for good. In this case, the mill, with its fixtures, was purchaséd by certain members of the society, at a cost of near four thousand dollars, and paid for with means borrowed from bank upon their individual credit and responsibility. It can be well understood, therefore, how it was, and why it was, the committee to award the mills was instructed to make' known to all applicants, that in no case would the mill be awarded except to parties giving good and' satisfactory security. The appellees understood these terms, and attempted to comply with them by a proposition in writing, to give a bond with satisfactory securities. Upon the faith of this undertaking, the mill was awarded to them f and actually placed in their possession. Some of the parties, however, offered as sureties or endorsers, declined to *767 assume the liability; and this part of the arrangement was defeated. Appellees then proposed in writing, to execute the trust deed, and that proposition was accepted, in lieu of the personal security.
This latter arrangement was a matter of favor to them, as they had not complied with the terms of the sale, and were liable at any time to surrender the possession of the mill. The deed was accordingly executed. It conveys the mill, with all its fixtures and appurtenances, a house and lot in Winchester, and more than a dozen tracts of land, containing not less than three thousand acres, situated in a half dozen different States. It directs with great minuteness, the order in which the property shall be sold, if default is made in the payment of the debts. And at the conclusion, this provision is added, “It is agreed that if the heirs of the said James P. Riely shall choose to make sale of the western lands privately, that they may do so; and the trustee shall unite in the sale ; and the proceeds of the said two-tenths to be applied to pay the debts hereby secured.
Row, it is inconceivable that such a deed, with such provisions, drawn with so much precision and accuracy ; evincing the greatest care and foresight in regard to the property conveyed and the proceeds of sale, should have been deliberately executed and placed on record, with an understanding that it should never be enforced, or if enforced at all, only on certain contingencies wholly omitted in the deed. The evidence does not warrant any such conclusion; on the contrary, I think it plainly shows that the bonds and the deed contain the true contract of the parties ; and there is not in this case the slightest foundation for the chai’ge of fraud against the appellant or the society he represents.
Por these reasons, I think -the decree of the Circuit court should be reversed, the injunction dissolved and the bill dismissed.
The other judges concurred in the opinion of Staples, J.
*768 The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. Thei’efore, it is ordered and decreed that the same be reversed and annulled, and that the appellees, George M. Gordon and J. 0. Riely, do pay unto the appellant his costs by him expended in the prosecution of-his appeal aforesaid here.
And this court proceeding to pronounce such decree as the said Circuit court ought to have rendered, it is further decreed and ordered that the injunction awarded the plaintiffs, J. Chap. Riely and George M. Gordon, on the 30th day of April 1869, “restraining John J. and' James H. Williams, trustees, from selling the steam saw mill in the proceedings mentioned until the further order, of the court,” be dissolved, the bill of the plaintiffs dismissed, and that they do pay unto the defendants their costs by them about their defence in the said Circuit court expended. Which is ordered to be certified to the said Circuit court of Frederick county.
Decree reversed.