Christian, J.,
delivered the opinion of the court.
The action in this case was debt. It was founded on a promissory note drawn by the plaintiffs in error and payable to defendant in error, for the .sum of *641 $5,379.75, payable on demand, and bearing date October 1st, 1873.
The pleas tendered by the plaintiffs in error (defendants in the court below) were payment, set off, and a special plea in writing, alleging, in effect,, failure of consideration as to part of said note. That plea is set out in the record; and as the only question in controversy turns upon the admissibility of the evidence under that plea, it is here inserted as follows:
3rd.- And the defendants for further plea say, that for and in ^consideration of the sum of $13,000, by the said defendants paid and agreed to be paid to the said plaintiff, the said plaintiff, who was the lessee of a certain watering place in' the county of Montgomery, known as the “Montgomery White Sulphur Springs,” for the term of five years, which term ended and expired on the 1st day of January 1874, agreed and contracted with the said defendants on the — day of June 1873, to sell to said defendants all the furniture belonging to said plaintiff and then in the use of the said plaintiff in and about the said watering place, and to assign, set over and transfer to the said defendants the unexpired term and lease of the said plaintiff in the said watering place; and the said defendants further say, that the said plaintiff, in consideration of the said sum of $13,000 above specified, further agreed and contracted with the said defendants, to make and cause to be made and to furnish the materials for making certain repairs and improvements to the cabins, buildings, grounds, lawn, fencing, baths, &c., of the said watering place, and to have the said repairs and improvements done, and to furnish the material in time to have the same complete, in time for the occupation and use of the same by the guests and *642 visitors at the said watering place during the ensuing season of 1873; and which said repairs, so contracted to be made by said plaintiff as aforesaid, were necessary and requisite to the complete and full enjoyment of the said watering place and to the comfort and accommodation of visitors, and are more particularly and specially set forth in the bill of particulars filed with this plea.
And the defendants say, that the plaintiff' wholly failed, neglected and refused to make or cause to be made or to furnish the materials for making the said repairs and improvements so contracted and agreed by him to be made as aforesaid, in time for the use and occupation of the same by the guests and visitors of said watering place during the season of 1873; whereby the said defendants were greatly injured and damaged, and suffered great loss in their business as keepers of said watering place, and were unable to accommodate and entertain many persons who applied for and sought entertainment at said watering place, and were unable to provide in a proper manner for the comfort and convenience of the guests and visitors at said watering place during the said season of 1873, by reason whereof many became dissatisfied and left.
And the said defendants say, that the said note in the plaintiff’s declaration sued on was executed by the said defendants to the said plaintiff as a portion of the $13,000 above specified and as a part of the consideration of the said repairs to said watering place agreed and contracted to be done by the said plaintiff as aforesaid; and by reason of the failure of the said plaintiff to make and cause to be made and to furnish the material for making the said repairs, as he agreed to do, there is a failure of the consideration for which said note in plaintiff’s declaration mentioned was exe *643 exited; and that by reason of such failure of consideration the said defendants would be entitled to recover damages in an action against the plaintiff to amount of $3,000, which sum of $3,000 they pray may be allowed as a set-off against the plaintiff’s demand in this suit. And this they are ready to verify; wherefore they pray, &c.
Upon this plea issue was made up, as well as upon the plea of payment and set-off. The jury found for the plaintiff' (the defendant in error) the amount of the said promissory note, subject only to the credits endorsed thereon. For this amount a judgment was entered; to which judgment a writ of error was allowed by this court.
Eight bills of exception were taken to the rulings of the court, which, in different forms, present the question as to the admissibility of the evidence under the special plea. It is proper, however, before noticing these questions, to refer to the admitted facts in the case. It seems that on the 25th November 1868, the “Montgomery White Sulphur Springs company” leased to the defendant in error, Thomas Wilson, and Lorenzo D. Lorentz, for the term of five years, commencing 1st day of January 1869, all the property of said company, consisting of a tract of land containing 1,300 acres, including the hotel, cottages and cabins upon the same, known as the Montgomery White Sulphur Springs, a watering place and popular resort for summer visitors, situated in the county of Montgomery.
This contract of lease was in writing, and was signed and sealed by the lessees, and also signed by the president of the company. In this contract of lease there were certain stipulations on the part of the lessees for *644 repairs to the railroad belonging to the company, and also for repairs to the buildings on said property. In this contract there was no stipulation as to the time-when these repairs were to be completed. By a subsequent agreement (which is not in the record), it seems that Wilson became the sole proprietor and successor to Wilson & Lorentz. On the 22nd of April 1873, the White Sulphur Springs company and Wilson entered into an agreement, by which it was definitely determined what was the character and extent of the repairs which Wilson, as the successor of . Wilson & Lorentz, was to make under the contract of November 25th, 1868, between the company and Wilson & Lorentz. This contract is in writing, and nowhere designates the time within which the repairs are to be completed.
On the 22nd April 1873, Wilson, having acquired the whole lease, made a contract with Cowan & Colhoun, by which he leased to them “ one equal moiety of the buildings, furniture of every kind and description, with all the privileges and appliances necessary for opening and conducting a watering place for the entertainment of visitors at the Montgomery White Sulphur Springs, for the season of 1873. This contract was also in writing, and nothing stipulated with regard to repairs. In June 1873, by a verbal contract between the parties, Oolboun & Cowan acquired the whole of Wilson’s lease, and purchased of him the furniture on the premises for the sum of $13,000; and it is admitted that the note upon which this suit is brought was part of the sum of $13,000 agreed to be paid for the unexpired lease and furniture.
It is also admitted that in this verbal agreement nothing was said in reference to the repairs which Wilson had stipulated to make in his contract of *645 April 22nd, 1878. I have thus stated, as concisely as I could, the undisputed and admitted facts disclosed by the record.
The plaintiff rested his case upon the note sued on, having proved its execution. The defendant admit-0 ting the due execution of the note, sets up as a bar to the plaintiffs’ action a failure of consideration in this, that the repairs to the buildings, which were agreed to be made by Wilson in his contract with the Montgomery White Sulphur Springs company, were to be completed before the spriDgs season of the year 1873 commenced, and that he had neglected, refused, and failed so to complete them, and, by reason of such failure, the defendants had sustained damage to the amount of $3,000.
The evidence upon which this defence is sought to be made good is that of an alleged parol agreement made by Wilson at the time of his written agreement with the springs company and with the defendants on 22nd April 1873; and the various bills of exception taken by the defendants raise in different forms, the •question whether such parol evidence was admissible.
The circuit court ruled out all evidence tending to show any parol agreement, to the effect that the repairs referred to in the said written agreement were to be made before the commencement of the springs season of the year 1873.
The question we have to determine is, was evidence offered by the defendants tending to prove such parol agreement admissible ? It will be observed, that in the several written agreements above referred to, no time is named within which the stipulated repairs are to be ■completed. That being the case, the law of such a contract is to give the tenant until the expiration of the lease to fulfil his contract for repairs upon the *646 leased premises, unless there be something in the nature of the repairs which require them to be made-Therefore, though no time is specified, the exPiration the lease is fixed by law as the time within which they may be completed, as certainly as if' it was so written in the agreement. This being the contract of the parties reduced to writing, and signed by them, can a parol agreement of another and different period, than the expiration of the lease, be received in evidence? The rule of law on this subject is now too well established to be questioned. It is the familiar rule, that “parol cotemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.” 1 Greenl. Ev., § 275. It was-announced as a rule of the common law at an early day, and down to the present moment has been uniformly adhered to by the courts of England and of this country. In the Countess of Rutland’s case, 5 Coke’s R. 25, it was said “that it would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth and agreement of the parties, should be controlled by an averment of parties, to be proved by the uncertain testimony of slippery memory.”
In Crawford v. Jarrett’s adm’r, 2 Leigh 630, Judge-Green thus states the rule: “Parol evidence cannot be-admitted (unless in cases of fraud or mistake) to vary, contradict, add to, or explain the terms of a written agreement by proving that the agreement of the parties was different from what it appears by the writing' to have been. In Watson v. Hurt, 6 Gratt. 634, Judge Baldwin announces the rule in the following terms: “It is perfectly well settled, that the terms of a written contract cannot be varied by parol evidence of what-occurred between the parties previously thereto or co *647 temporaneously therewith.” In Towner v. Lucas, 13 Gratt. 705, 715, Judge Allen, after an able review of the cases, supposed to infringe upon this rule, “I can find no case which determines that oral cotemporaneous evidence is admissible to contradict the terms of a written agreement, or substantially vary the legal import thereof, provided the instrument was a valid instrument, and the party designed to execute it in its existing form.”
In Woodward, Baldwin & Co. v. Foster, 18 Gratt. 200, Judge Joynes, after referring to Towner v. Lucas, (supra), says: “These general principles are of the utmost importance in the administration of justice. Without them there would be no certainty in written contracts, and no safety in the most formal transactions. They ought not to be frittered away by nice distinctions to meet the hardships, real or supposed, of particular cases.”
It is insisted, however, by the learned counsel for the plaintiffs in error here, that they do not controvert the principles of the rule of law above stated; but that this case comes within some supposed exception to the general rule. It is urged that the parol agreement offered to be proved, was an independent collateral substantial agreement relating to the same subject matter, and forming part of the consideration thereof. It is said, that Cowan & Colhoun were induced to make the contract with Wilson for the unexpired lease and furniture, because of the independant verbal agreement of Wilson, at the time of the written agreement bearing date 22nd April 1873, that he would complete the repairs (which he had bound himself to make) by the time the springs season of that year commenced: to-wit, in June 1873. It is insisted that such an agreement was an additional, independent *648 agreement, and one consistent with the original written agreement. The eases relied upon by the learned for the appellants, to which I have had access, seetn t° establish the following exceptions to the general rule, that “Parol cotemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument:” When the oral evidence establishes an agreement additional to, but consistent with the written agreement.
2. Where the evidence is offered to show fraud in the procurement of the written contract, or a breach of confidence in perverting what was delivered conditionally or diverso intuitu, and using it as a valid instrument.
8. Where the evidence is offered as proof of any mistake or omission, and a fraudulent attempt to take advantage thereof.
This case is not within any of these exceptions, nor can it be brought within any other well established exception (see Towner v. Lucas, supra); for the parol agreement attempted to be set up is entirely inconsistent with the terms of the written agreement; and indeed (if established), would in terms vary and contradict the written agreement. By the parol agreement (if indeed any such ever existed) the defendant in error bound himself to finish the repairs by the-day of June 1873. By the written agreement he bound himself to complete the repairs by the 1st day of January 1874. It is true that no particular time was designated within which to complete the repairs: but in the absence of any designated time,, the law fixes the period at the termination of the lease. And when the legal import of a contract is clear and definite the intention of the parties is for all substantial purposes, as distinctly and fully expressed as if they had written *649 out in words what the law implies. Woodward, Baldwin & Co. v. Foster, 18 Gratt, 200, and eases there cited.
It is plain, therefore, that when by the written ment the time fixed is the expiration of the lease, any parol agreement by which another and different period within which the repairs shall be completed, is establisbed, does vary and contradict the written agreement; and the case is thus brought within the very terms of the rule.
I am therefore of opinion, that the circuit court did not err in excluding from the jury all evidence tending to set up such parol agreement, and all evidence offered for the purpose of laying a foundation for the introduction of such evidence. This disp.oses of all the bills of exceptions taken by the plaintiffs in error. For the eight bills of exceptions all present in different forms the question as to the admissibility of parol evidence inconsistent with the written agreement, or the admissibility of evidence upon which to lay the foundation for the proof of such parol agreement. The circuit court was right in exclnding all the evidence of this character.
But there is still another ground upon which the circuit court was well warranted in excluding the evidence offered. It was this: The pretension of the plaintiffs in error is that the verbal agreement relied on was made in April 1873 with the Montgomery White Sulphur Springs company, and that in June of that year they took the lease with the understanding that this verbal stipulation was to be carried out. They admit that nothing was said on the subject of repairs then (June 1873), but that they were to have the benefit of the alleged verbal agreement made with the springs company. How there are two pregnant facts to show that nonsuch verbal agreement was ever *650 made. The first is, that the alleged verbal contract by which it was agreed that the repairs were tó be-made before the commencement of the springs season was in fact made after that season ' had actually commenced (28th June). So that when they bought the lease and furniture they knew that the repairs had not been made; and that they could not be made in time to affect in any degree the season of 1873.
But another fact, utterly inconsistent with the verbal contract relied upon, is that the note sued on bears date the ls¿ day of October 1873, when the springs season was pretty well over. Now it is unreasonable to the last degree, if' not incredible, that Colhoun & Cowan should have executed their note to Wilson in October for $5,079.75, if they on that day claimed that Wilson was indebted to them in the sum of" $3,000 for a failure to comply with his contract four-months before. dSTo such claim was then asserted, nor was any claim asserted under the alleged verbal contract of June until the institution of this suit.
The execution and delivery of the note in October is a powerful circumstance, if not conclusive proof, to show that the claim which grew out of the transactions, in June, was then waived or settled between the parties, and could not be asserted by way of defence to an action on the note.
IJpon the whole case, I am of opinion there is no-error in the judgment of the circuit court, and that the same be affirmed.
Judgment affirmed.