Daniel, J.
The first assignment of error raises the question as to the validity of the deed of trust of April 6th, 1850, made for the benefit of William McArthur & Co.
*691 The 20th section of the act of 29th March 1837, concerning limited partnerships, declares that every sale, assignment or transfer of any property or of such partnership made by such partnership, when insolvent or in contemplation of insolvency, or after or in contemplation of the insolvency of any partner, with the intent of giving a preference to any creditor of such partnership or insolvent partner, over other creditors of such partnership, and every judgment confessed, lien created, or security given by such partnership, under the like circumstances, and with the like intent, shall be void as against the creditors of such partnership. Sess. Acts 1836-7, p. 41. And the questions which we have to consider under this section are, Was the firm of Penman, Thompson & Penman insolvent at the date of the execution of the deed? Or did they make the deed in contemplation of insolvency ? And in either event, was the deed made with an intent to give to McArthur & Co. a preference over other creditors of the partnership ?
As preliminary, however, to the examination of the first of these questions, we have to ascertain the sense in which the term “insolvent” has been here used by the legislature.
On the part of the appellants it is contended that the legislature were looking to insolvency in the technical sense of the term, or open and notorious inability to pay; and in support of this view we have been referred to the cases of United States v. Hooe, 1 Cranch’s R. 73, and Prince v. Bartlett, 8 Id. 431, in which the Supreme court of the United States have so defined the term in construing certain acts of congress fixing the priority of the United States over other creditors, of its debtors, claiming under conveyances, assignments, &c. made by the latter.
On the other hand, the counsel for the appellee contends that the statute is analogous to a bankrupt law; *692 and that in construing it we should rather be guided by decisions ascertaining the meaning of the word as employed in such laws; and refers to the case of Bayly v. Schofield, 1 Maule & Selw. 338, and to an anonymous case reported in a note to Moss v. Smith, 1 Camp. Cas. 352. In the former of which the term “insolvency” as used in the bankrupt law of England in respect to a trader, was held to mean that he was not in a situation to make his payments as usual; and it was said that it would not follow that he was not insolvent because he might ultimately have a surplus upon the winding up of his affairs. And in the latter of which Lord Ellenborough held that the “insolvency” mentioned in the statute must mean a general inability in the bankrupt to meet his engagements.
I have examined these cases, but I have been unable to perceive that any of them furnish a rule to guide us in the decision of this. No such resemblance is shown between the statute under consideration and the law of congress on the one hand, or the English bankrupt law on the other, on which the decisions referred to were founded, as to justify the supposition that the legislature, in using the term in question, had a reference to the sense given to it in any one of said decisions. Showing however as they do that the word has received various and widely different interpretations, dependent on the character and object of the laws in which it is found, these decisions do serve the purpose of negativing or of tending to negative the conclusion that there is any well ascertained, generally received technical meaning so attached to the word as to require the courts to adopt it rather than its primary meaning, or some other sense to be gathered from the circumstances and connection in which the word is used.
In England limited partnerships; of the kind sanctioned by our act of 1837, (unless they have been *693 very recently introduced,) are unknown. Hence in the examination of such questions we are without the aid usually derived from a reference to the English reporters. Our act is, I believe, taken from that of New York, which was passed in 1822, and which, it is stated in a recent work on the subject, (Troubat on Limited Partnerships, p. 48,) was borrowed from the Commercial Code of Prance. Such partnerships are now authorized by statutes similar to our own, in most of the states of the Union. But the counsel have not cited, and I have been unable to find, any case in which the precise question before us has been decided. In the Code of 1849, p. 583, the legislature have used the term in its ordinary or primary sense, or have rather put such sense in the place of the term itself, by declaring, in the 10th section of the chapter on partnerships, &c. (which comprises substantially the provisions of the 20th and 21st sections of the act of 1837,) that “no sale, &c. of the property of-any sucli partnership shall be valid if made at a time when it has not sufficient property or effects to pay all its debts, for the purpose of giving a preference to one or more of its creditors over any other creditor.”
One of the objects and designs of such provision is to secure in case of the failure of the partnership a fro rata distribution of its property among all its creditors. To declare that open and notorious bankruptcy is the true and only test of insolvency, would, as was argued by the counsel for the appellees, defeat in most cases the design of the law, inasmuch as the desire of a firm in failing circumstances to sustain itself as also to prefer its special friends, would generally result in sales and assignments of most of its property, made to insure those ends, before such bankruptcy would occur. To say on the other hand that the firm shall be held to be insolvent whenever from any cause it may fail to meet its engagements in the *694 usual course of business, would seem to be harsh, and might tend greatly to discourage the formation of such partnerships. In a country like ours, where so much of its commercial business and trading enterprise are based on borrowed capital, and where sudden and unexpected expansions and contractions of the currency are matters of frequent occurrence, it may often happen that the most prudent firm, by the unexpected failure of some of its debtors to meet their payments, or other like causes, may find itself unprovided with available means to meet its own bills and notes as they mature, though possessed of assets amply sufficient to satisfy, ultimately, all its debts and liabilities, A law declaring it incompetent in a partnership so situated, to discharge its more pressing engagements by sales or assignments of portions of its property aud credits to certain creditors, to pay or secure their demands, might, and most probably would, often occasion the stoppage and winding up of such concerns at times when the safety of the creditors would demand no such sacrifice.
The leading design and policy of the acts of 1887 and 1849 would seem to be essentially the same; and I have been unable to discover any good reason for supposing that the legislature, in declaring in the former, certain assignments made by such partnerships “ when insolvent,” to be void, intended any thing more or less than that which they have plainly manifested in the latter, by the declaration that such assignments shall not be valid “ if made by the partnership at a time when it has not sufficient property or effects to pay all its debts.”
Taking the insufficiency of its property to pay its debts to be the true test of the insolvency of the partnership, I do not think that any serious doubt can be entertained as to the’insolvency of the firm in this case at the date of the deed. The commissioner’s *695 report (from the consideration doubtless that it was not excepted to) has not been made a part of the transcript of the record, and I have not thought necessary to compile from the pleadings, exhibits and depositions a statement of the precise amount of the indebtedness of the concern. It is sufficient for the purpose in view to observe that the record shows the amount of the debts at the date of the deed to have been little, if any, less than the sum of forty thousand dollars. The sale of the property conveyed was made so soon after the execution of the deed, as, when taken in connection with other circumstances and proofs, to negative the conclusion that there was any very material depreciation in the value of the property between the two events. The sale is shown to have been well attended and fairly conducted. And we have the opinions of witnesses whose capacity, business experience and knowledge of the value of such property, entitle their judgments to the greatest weight, that the property was well sold, and brought its full value. The entire proceeds of the sales are shown to be some twenty-two thousand dollars — a little more than half the aggregate of all the debts.
The deed was made at a time when the concern was confessedly greatly embarrassed. It contains a sweeping conveyance of the whole of the partnership property. It is made to secure the large debt of twelve thousand dollars — a debt nearly large enough (as the result has shown) to absorb the entire residue of the proceeds of the property, after discharging prior liens. Most if not all of the items of which the debt was composed, were then due. By the terms of the deed a sale is to be made whenever there shall be a failure to pay any part of the debt due or to become due, and McArthur & Co. shall require a sale to be made. It is said,.it is true, that there was an expectation that McArthur & Co. would make further advances, by the aid of *696 which and other means the firm could hope to relieve itself ultimately from its embarrassments, and proceed successfully with its enterprise; and the deed recites the desire and intention of the grantors to provide not only for the payment of the existing debt, but also for any further advances or acceptances which McArthur & Co. might make; and, on providing for the application of the proceeds in the event of a sale, directs the payment to McArthur & Co. of all debts due to them, or for which they are bound, or may be bound when the sale is made.
There is, however, I think, no pro'of of any assurance or promise by McArthur & Co. upon which a prudent firm could have reasonably built the expectation of further acceptances or advances by them. In this state of things, it is difficult to suppose that the parties did not contemplate as a probable result the events which speedily ensued the execution of the deed, viz : the stoppage and failure of the concern. I am satisfied that the deed was not only made at a time when there was an insufficiency of property to pay the debts of the firm, but was also made with the expectation of a winding up of the concern, at no remote period; with a deficiency of assets to pay' its engagements ; and so in contemplation of insolvency.
The deed, as has been already stated, conveys all the property of the partnership; and it provides for the payment of the debt of McArthur & Co. and for the payment of that debt alone. From these facts, and what has been already established in respect to the character and design of the deed, the further conclusion follows naturally, that the deed was made with the intent to give to McArthur & Co. a preference over other creditors; and that the judge of the Circuit court properly decreed the deed to be void as to them. That the Circuit court also decided correctly in declaring that the judgments confessed by the firm in favor of *697 certain of their creditors subsequently to the exeeution of the deed of the 6th April 1860, were also void as to the other creditors, is, I think, equally clear. The twentieth section of the act, as we have seen, embraces in terms “ every judgment confessed” “ under the like circumstances, and with the like intent;” and the judgments in question were not only confessed after the execution of the deed and when the firm was notoriously insolvent, but were confessed under an agreement ascertaining the order in which they should rank in the distribution of the assets.
The twenty-second section of the act declares that every special partner who shall violate any provision of the twentieth and twenty-first sections, or who shall concur in or assent to any such violation by the partnership, or by any individual partner, shall be liable as a general partner. The execution of the deed was suggested by McArthur, and he is a party to it. That he ivas at one time liable as a general partner is therefore obvious.
The twenty-third section provides that in case of the insolvency or bankruptcy of the partnership, no special partner shall under any circumstances be allowed to claim as a creditor until the claims of all the other creditors of the firm shall be satisfied; and it was contended in the court below that inasmuch as the debt of twelve thousand dollars Avas due to a firm of which McArthur was a partner, such debt could not participate in the distribution of the assets of the concern of Penman, Thompson & Penman. The Circuit court very properly held, I think, that the section did not intend to exclude from such participation debts due to concerns of which the special partner might be a member. A debt due to McArthur & Co. is not a debt due to McArthur individually. The rights of McCrery, the other partner of the concern of McArthur & Co. stand obviously out of and beyond the reach of *698 the terms and spirit of the section. Whilst McArthur’s interest as a member of the concern of McArthur & Co. in the ratable proportion of the assets assignable to the debt due that concern, might, when ascertained, be reached by the creditors of the concern of Penman, Thompson & Penman, McCrery’s interest therein, upon every principle of equity, occupied the same common ground with debts due to any other creditors having-no connection with McArthur.
Upon the general principles governing the jurisdiction of courts of equity, and upon the reasoning of the chancellor in Innes v. Lansing, 7 Paige’s R. 583, I think the jurisdiction taken by the Circuit court in this case is clear. We have had no controversy here, and the record discloses no evidence of any in the court below, between those judgment creditors, if any, who may have obtained their judgments in invitum, and those who obtained theirs by confession. Theje being thus no question in the case in respect to legal priorities, except such as have been shown to be void as to creditors, I do not perceive that there was any difficulty in the way of the court’s proceeding, as it has done, to decree a ratable distribution of the assets of the firm among all the creditors.
And as the court had jurisdiction of the case for the purpose of protecting and distributing the assets, it had, in my opinion, a right to go on and give complete relief, and, to that end, to render such personal decrees as the rights and liabilities of the parties required. And if McArthur still remained liable as a general partner, I can see no objection to a decree against him to enforce that liability. The case of Haggerty v. Taylor, 10 Paige’s R. 261, cited by the counsel of the appellant, in his written note, does not seem to me to conflict with this view; as, in that case, it was held that the complainants had shown no right to any share of the assets which they were seeking to sub *699 ject. In that case the complainants were seeking to participate in the funds of a limited partnership which was to terminate at a particular period, on account a debt contracted after such period with the general partners, who, without complying with the requisites of the act in respect to notice of a renewal or continuance of the partnership, had undertaken to con-, tinue the business.
The court held that the creditors of the firm, previous to the period fixed for the expiration of the partnership, were entitled to a preference, and should be paid ratably out of the property which then belonged to the limited partnership, and refused to appoint a receiver at the instance of the complainants. And as to any personal responsibility which the complainants had a right to assert against the defendants on account of transactions subsequent to the termination of the original partnership, they were remitted to their remedy at law. The distinction between the two cases is obvious. In Haggerty v. Taylor, the only relief to which the plaintiffs were entitled, if any, was one of a legal nature; whilst in the one before us the plaintiffs succeeded in establishing a right to the jurisdiction of the court on equitable grounds: And having done so the question for the court was whether it should go on and end the controversy, or put tlie parties to the expense and delay of numerous suits at law to fix a personal responsibility growing out of the same transaction, and to be established by the very proofs on which was founded the equitable relief sought by the plaintiffs and given by the court.
A doubt, however, has been suggested whether the judgment creditors, by proceeding at law against the other partners alone, have not thereby lost the right which they at one time had (as has been shown) to hold McArthur liable as a general partner. In order to solve this doubt, a further reference to the pro *700 visions of the act is necessary. The second section declares that such [limited] partnerships may consist one or more persons who shall be called the genera| par£nerg) an(j wj10 ]je jointly and severally ^ound as partners now are by law, and of one or more persons who shall contribute in actual cash payments a specific sum or capital to the common stock, who shall be called special partners, and who shall not be liable for the debts of the partnership beyond the fund so contributed by them. By the third section the general partners only are authorized to transact business and sign for the partnership, and to bind the same.
In the fourteenth section it is declared that suits in relation to the business of the partnership may be brought and conducted by and against the general partners in the same manner as if there were no special partners; and the special partners shall be liable to and suable by the firm for debts contracted with it in the same manner as if they were not partners. The eighth section, however, it will be seen, after providing that no such partnership shall be deemed to have been formed until the certificate and affidavit in respect to the nature of the business of the firm, &c. réquired in previous .sections, shall have been made and recorded, declares that, if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as - general partners. And we have already seen in case of a concurrence by the special partner in the violation of the twentieth and twenty-first sections by the execution of the assignments, &c. therein prohibited, he is made liable as a general partner by the twenty-third section.
Without stopping to note the many points in which the relation borne by the members of such an association towards their associates and the public varies from that which exists in an ordinary partnership, it is suf *701 ficient for our purpose to observe some of the more important differences which distinguish the two kinds of partnership in respect to the remedies given to creditors.
In the case of an ordinary partnership, a creditor is required to sue all the members of the firm in respect to any claim against the concern. And if he omits any one of the members, he may be met and defeated of his action by a plea in abatement. In the case of a limited partnership, he is expressly authorized to proceed against the general partners alone, in relation to any business of the partnership, in the same manner as if there was no special partner. And it is only when it is sought to make the latter liable personally on account of some violation of the statute which renders him liable as a general partner, that the creditor has any right to proceed against him.
In all cases where the creditor takes a judgment against one or more of the members of a general partnership, omitting others, he loses thereby all recourse at law against the latter, even though they be dormant partners, and unknown at the time to the creditor. The joint contract is held to be merged in the judgment as to the members against whom it is obtained; and being so merged, is equally barred as to the others, since no joint suit can be maintained upon it. Collyer on Part. 659, and cases cited in notes; Ward v. Motter, 2 Rob. R. 536.
On the other hand, it is obvious that there may be cases growing out of limited partnerships, in which it would be absurd to hold that a judgment against the general partners could be pleaded as a merger of the liability of the special partner. For it may often happen that the general partners may violate the provisions of the twentieth section by the execution of conveyances and assignments therein prohibited after judgments obtained against them. In a suit brought *702 to make the special partner liable for his concurrence in such violation, the repugnancy to all legal reasoning, in allowing a previous judgment against the general partners to merge and bar the liability of the special partner, is too manifest to require comment.
So again, a falsehood in the certificate of partnership in respect to the capital contributed by the special partner, may never come to light till after a creditor proceeding under the fourteenth section has obtained his judgment against the general partners. To declare that the judgment should bar a suit against the special partner, would not only be obviously unjust but in conflict with the terms of the eighth section, declaring all the persons interested in the partnership liable in such case as general partners. Yet in the case of a general partnership, (as has been already stated,) consisting of ostensible and dormant partners, a judgment against the ostensible partners completely bars all recovery at law against the dormant partners, though unknown to the plaintiff until after his judgment was obtained.
I deem it unnecessary to pursue the contrast further, as the points of variance already exhibited are sufficient to show that the technical rules, which so often embarrass and sometimes defeat the creditor in prosecuting at law his demands against the members of general partnerships, especially in cases where there are dormant partners, can have little application in regulating the remedies given by the statute against the members of a limited partnership.
In a case like the one before us, where the act, by the assent to which by the special partner, his liability as a general partner was incurred before the creditors had obtained their judgments, I do not doubt that the creditors might have united all of the partners in their several suits. The general partners were bound as such as well by their contracts as by their violation of the *703 statute; and as the special partner by his concurrence in the execution of the prohibited conveyance, had also made himself liable as a general partner, no jection could, have been made to joint actions against all the partners. But it by no means follows that the creditors were compelled to bring such actions. In a suit by a creditor against the general partners alone on the contract, it would have been an anomalous plea in abatement by them, wherein they should have alleged that since the execution of the contract they had united in an illegal effort with another, who was not made a party to the suit, to deprive the creditor of the benefit of his contract by the assignment of their effects to pay exclusively the debt due to another creditor.
It is obvious that the remedy upon the contract cannot be merged in the cause of action arising out of the wrongful act of the partners. And it seems to me that the question, -whether in such case the creditor, by instituting his action against the general partners alone, and upon the contract, had elected to waive his remedy against the special partner for the violation of the act, would turn not upon the doctrine of technical merger, but upon the proofs in respect to his real intentions. The only case in which the analogy to be drawn from the law in respect to the remedies against general partnerships would seem to apply, would be when the creditor should, by the frame of his pleadings, show that he was proceeding on a cause of action arising out of the violation of the statute, and for which all the partners were liable; and should yet take a judgment against the general partners alone.
If, however, there be doubt as to whether if sued at law McArthur might not have pleaded the judgments against the general partners as a merger of the demand against him, it requires, I think, no extension of the principles recognized by this court in the cases of *704 Sale v. Dishman’s ex’or, 3 Leigh 548, Galt’s ex’or v. Calland’s ex’or, 7 Leigh 594; Weaver v. Tapscott, 9 Leigh 424, and Niday v. Harvey & Co. 9 Gratt. 454, to hold that-such plea cannot avail in a court of equity. And the consideration that the creditors might possibly have encountered embarrassment and difficulty in the pursuit of the demand at law, serves but to furnish an additional argument why the .Circuit court, instead of exposing them to such hazards, should have proceeded, as it has done, to give complete relief.
Having disposed of those questions, which from their novelty and difficulty seemed to me to call for more especial notice and remark by the court, the length to which I have found it necessary to extend my opinion in doing so, induces me to forbear any further observation in respect to the other questions raised in the pleadings, than that, after having given to the whole record a careful examination, I have been unable to discover any error in the decrees of the court.
I think the decree should be affirmed.
The other judges concurred in the opinion of Daniel, J.
Decree affirmed.