JOYNFS, J.
This action was brought by Woodward, Baldwin & Co. against Foster & Co. as endorsers of two bills of exchange drawn in Richmond in 1862, upon New York, payable to the order of Foster & Co., and by them endorsed specially to the plaintiffs, and which were dishonored bj' the drawees. The suit was dismissed as to Foster’s partner, and proceeded to a judgment against Foster, to which the plaintiffs, having recovered less than they claimed to be entitled to, obtained a supersedeas.
Upon the trial, the defendant introduced evidence to prove, among other things, that when the bills of exchange were endorsed by Foster and delivered by him to Smith, the agent of the plaintiffs, to whom Foster had sold them, it was agreed between Foster and Smith that Foster should retain in his hands the amount paid to him by Smith for the bills, being the sum expressed on their face, with fifteen per cent, added, which was paid in Confederate States treasury notes; and not pay the same over to the drawer until it should be ascertained that the bills had been paid by the drawees; and that, in case they should not be paid, Foster should, upon notice thereof and the return of the bills to him, refund the money to Smith; that this arrangement was made because it was uncertain whether the bills would be paid; that Foster was a broker, and had no interest in the bills, but was only to receive a commission of two per cent, as compensation for services as broker, in case the bills were paid.
The counsel for the plaintiffs moved the court to instruct the jury to disregard all the parol evidence tending to *prove an agreement between Foster and Smith, before or at the time of the endorsement of the bills, inconsistent with the contract created by the endorsement of the bills by Foster and the delivery of them to Smith, and that the contract evidenced by the said bills and the endorsements thereon was an absolute contract by Foster to pay to the plaintiffs the amount of said bills, with all legal damages, provided they should be duly presented, dishonored and protested, and notice thereof given to Foster; the value of the amount called for by said bills to be computed according to the value of Confederate notes at the date of the endorsements. The court refused to give this instruction. The propriety of this refusal is the point for decision. The only question raised in the argument in this court is, whether it was admissible for the defendant to prove the parol agreement between himself and Smith at the time of the endorsement and delivery of the bills. This is the only question we are expected to decide ; the counsel for the defendant having declined to raise any question arising out of the war which was pending between the United States and the Confederate States at the time these transactions took place.
The legal import of Foster’s endorsement of the bills was, that he transferred them to the plaintiffs, and assumed upon himself the ordinary liabilities of an endorser of such bills. This legal intendment as to *590 Foster’s liability is not repealed or impaired by the facts that he was a broker, that he had no interest in the bills, and that he was only to receive a commission for services as broker in case the bills were paid. It is not the usage of brokers to endorse all the bills they sell. Why did Foster endorse the bills at all, unless it was to give them credit by his name? Why were they not drawn payable to the order of the drawer, as is usually done when the bill is to be sold in the market, upon the credit of the drawer alone? Foster’s *endorsement was not necessary to carry into effect the agreement as to his holding the proceeds. See Goupy & al. v. Harden & als., 7 Taunt. R. 159, 2 Eng. C. L. R. 58.
The evidence in relation to the cotempo-raneous parol agreement tended to prove, that Foster was not to be liable as endorser, but was to be liable only as bailee of the sum paid to him for the bills, which sum he was to refund to Smith or to pay over to the drawer, accordingly as the bills might be paid or dishonored by the drawees. This evidence, therefore, evidently tended to vary and contradict the legal import of the endorsement. It did so as much as if the bills had belonged to Foster himself. The instruction asked was predicated on that view, and by refusing it the court virtually decided that it was no objection to the evidence ; that it tended to vary or contradict the contract imported by the endorsement, and this has not been disputed in the argument.
If the contract of Foster had been written out in words, this evidence would have been inadmissible upon the well established and familiar principle, that evidence of a contemporaneous parol agreement is not admissible to contradict or vary that which is contained in a written instrument. 1 Greenleaf Evid. §§ 277, 281, 282; Towner v. Lucas’ ex’or, 13 Gratt. 703; Allen v. Furbish, 4 Gray R. 504. And such evidence could not be received on the ground that it would be a fraud to insist on the written contract, in violation of the parol agreement, because the evidence of the parol agreement is itself the only evidence of fraud. Towner v. Lucas’ ex’or. These general principles are of the utmost importance in the administration of justice. Without them, there would be no certainty in written contracts, and no safety in the most formal transactions. They ought not to be frittered away by nice distinctions to meet the hardships, real or supposed, of particular cases.
*These general principles were not controverted in the argument, but it was insisted that they have no application to contracts, the terms of which are not written out in words, but are implied by law. And it was contended accordingly, that where an endorsement is in blank, or where, as in this case, its express terms import a transfer of the paper to the en-dorsee, and are silent as to anything more, it is competent for the endorser, in an action against him by his immediate endorsee, to prove the special agreement on which the endorsement was made, whatever it may be, and thus to vary or contradict the ordinary legal import of the endorsement. The following authorities were cited in support of this view: Hill v. Ely, 5 Serg. & Rawle R. 363; Barker v. Prentis, 6 Mass. R. 430; Twogood ex parte, 19 Ves. R. 229; Mehetin v. Barnet, Coxe R. 86; Field v. Biddle, 1 Yeate’s R. 122. Other cases of like effect are collated in 4 Cowen Phil. Evid. 1473. The counsel for the plaintiffs cited Watson v. Hunt, 6 Gratt. 633; and Towner v. Lucas’ ex’or, 13 Gratt. 705.
There is no just ground in principle for the distinction thus contended for. When the legal import of a contract is clear and definite, the intention of the parties is, for all substantial purposes, as distinctly and as fully expressed, as if they had written out in words what the law implies. It is immaterial how much or how little is expressed in words, if the law attaches to what is expressed a clear and definite import. Though- the writing consists only of a signature, as in the case of an endorsement in blank, yet where the law attaches to it a clear, unequivocal and definite import, the contract imported by. it can no more be varied or contradicted by evidence of a cotemporaneous parol agreement, than if the whole contract had been fully written out in words. The mischiefs of admitting parol ^evidence would be the same, in such cases, as if the terms implied by law had been expressed.
In conformity with these views, the rule which excludes evidence of a cotemporaneous parol agreement to contradict or vary a contract in writing, is applied in England to the case of an endorsement in blank, as may be seen from the cases of Hoane v. Graham, 3 Camp. R. 57; and Free v. Hawkins, 8 Taunt. R. 92, (4 Eng. C. L. R. 31). It is applied also to the case of an acceptor, the special terms of whose contracts, as in the case of an endorser, are not expressed in words, but are supplied bjr legal construction and intendment. Basant v. Cross, 10 Com. B. R. 895, (70 Eng. C. L. R.); Adams v. Wordley, 1 Mees. & Welsb. R. 374; Acc. Cowles v. Townsend, 31 Alab. R. 133.
In Pike v. Street, 1 Mood. & Walk. R. 226, (22 Eng. C. L. R. 299,) tried before Lord Tenterden at Nisi Prius, the action was brought by the endorsee of a bill of exchange against his immediate endorser. The defence was, that though the plaintiff gave value to the defendant, it was upon a verbal agreement that he should sue the acceptor only, and that he should not sue the defendant as endorser. Lord Tenterden held, that such an agreement, if proved, would be a good bar to the action. This case was cited by counsel in Foster v. Jolly, 1 Crompt. Mees. & Rose. R. 703, as an authority to show, that evidence of a cotem-poraneous parol agreement might be given to vary the written contract of an endorser. But Parke, B., said that that case fell within *591 the class in which the consideration is contradicted ; the evidence went to show that there was no consideration as between the plaintiff and the defendant. Whether this observation was or was not justified by the facts of the case, it indicates the ground upon which alone, in the opinion of a Judge of the greatest ^learning and eminence, the opinion of Eord Ten-terden can be sustained. The general rule is thus stated by Mr. Justice Byles, in his work on Bills 77, and is applicable to all the parties to a bill of exchange: ‘ ‘No verbal agreement can take effect if cotempo-raneous with the making of the instrument; for thát would be to allow verbal evidence to vary a written contract. ‘Every bill or note,’ says Parke, J., ‘imports two things: value paid, and an engagement to pay the amount on certain specified terms. Evidence is admissible to deny the receipt of value, but not to vary the engagement. ’ ” So it has been held that between the immediate parties, evidence may be given of a cotemporaneous parol agreement, consistent with the written contract; as, for example, that the bill was endorsed and handed over for a particular purpose, as for collection, without giving to the trustee the usual rights of an endorsee; Manley v. Boycot, 2 El. & Bl. R. 46, (75 Eng. C. E. R.); or that the bill was transferred as an escrow, or upon an express condition, which has not been complied with. Bell v. Lord Ingestre, 12 Queen’s Bench R. 317, (64 English C. E. R. 10), Ricketts v. Pendleton, 14 Maryl. R. 320. See also Wallis v. Littell, 11 Com. Bench R. 369, (103 Eng. C. E. R.), and cases cited. In short, such cases are subject to the ordinary rules applicable to the admission of parol evidence in reference to written contracts. Under these rules, it is always competent to show a want of consideration or fraud, as between the immediate parties, in order to defeat the contract. 1 Greenl. Evid. 284. So evidence of the relations of the parties, and of the circumstances under which a written contract was made, may be given in order to explain the intention when not plainly expressed. 1 Greenl. Evid. § 477; Crawford v. Jannett, 2 Eeigh 630; Nash v. Towne, 5 Wall. U. S. R. 689. And this rule, while applicable to all written instruments, applies especially to mercantile ^instruments. Moore v. Holt, 10 Gratt. 284; Bainbridge v. Wade, 16 Queen’s Bench R. 89 (71 Eng. C. E. R.); Humphrey v. Dale, 7 El. & Bl. R. 266 (90 Eng. C. E. R.). See Broom’s Legal Maxims, 465-477.
In Bank of United States v. Dunn, 6 Peters’ R. 51, the action was brought against Dunn as endorser of a note made by Scott, payable to Dunn, and endorsed by him, and by one Carr. The defendant offered Carr as a witness, who testified that before he endorsed the note he had a conversation with Scott, the maker, who told him that a pledge of stock had been, or would be, made to secure the ultimate payment of the note, and that there would be no risk in endorsing it; that he then went to the bank, and saw the president and cashier, from whom he understood that the names of two endorsers residing in Washington were required on the note as a matter of form; and that he would incur no risk in endorsing it; that he communicated both conversations to Dunn, and persuaded him to endorse the note, representing to him that he would run no risk, as the note was secured by a pledge of stock; that the impression he received from Scott and from the president and cashier was, that the endorsers would be held liable only in the event of deficiency after the pledge of stock had been first resorted to; and that he and Dunn endorsed the note under this belief, and without any consideration.
The Supreme Court held, that this evidence was improperly received. Mr. Justice McEean, delivering the opinion of the court, said: “On the part of the defendant’s counsel it is contended, that between parties and privies to an instrument not under seal, a want of consideration in whole or in part may be shown. That the endorsement in question was made in blank ; and that it is competent for the defendant to prove under what circumstances it was made ; that if an assurance were given at the time of *the endorsement that the names of the defendant and Carr were only required as a matter of form, and that a guarantee had been given for the payment of the note, so as to save the endorsers from responsibility, it may be proved under the rule which permits the promisor to go into the consideration of a note or bill between the original parties.
“In support of this position authorities are read from S Serg. & Rawle 363, and 4 Wash. C. C. Rep. 480. In the latter case, Mr. Justice Washington says: ‘The reasons which forbid the admission of parol evidence to alter or explain written agreements and other instruments do not apply to those contracts implied by operation of law, such as that which the law implies in respect to the endorser of a note of hand. The evidence of the agreement made between the plaintiffs and defendants, whereby the latter were to be discharged on the happening of a particular event, was therefore properly admitted.’
“The decision in S Serg. & Rawle was on a question somewhat analogous to the one under consideration, except in the present case there is no allegation of fraud, and the decision in that case was made to turn in part at least on that ground.
‘ ‘In Pennsylvania there is no court of chancery', and it is known that the courts in that State admit parol proof to affect written contracts to a greater extent than is sanctioned in the States where a chancery jurisdiction is exercised. The rule has been differently' settled in this court.”
* * it- * -x- -x- -x- -x- x-
“The liability of parties to a bill of exchange or promissory note had been fixed on certain principles, which are essential to the credit and circulation of such paper. *592 These principles originated in the convenience of commercial transactions, and cannot now be departed from.
‘ ‘The facts stated by the witness Carr are in direct ^contradiction to the obligations implied from the endorsement of the defendant. By his endorsement he promised to pay the note at maturity, if the drawer should fail to pay it. The only condition on which this promise was made was that a demand should be made of the drawer when the note should become due, and a notice given to the defendant of its dishonor. But the facts stated by the witness would tend to show that no such promise was made. Does not this contradict the instrument? and would not the precedent tend to shake, if not destroy, the credit of commercial paper.”
In Brown v. Wiley & al., 20 How. U. S. R. 442, in an action by the payee of a bill against the drawer, the defendant offered evidence to prove that it was expressly agreed by the agent of the plaintiffs, when the bill was delivered to him, that it should not be presented for acceptance until other bills drawn on the same parties in favor of the plaintiffs had been provided for by the defendant by placing funds in the hands of the drawees, who had agreed to accept the last bill after they should receive funds to meet the others, and that the bill would not have been delivered to the agent of the plaintiffs if he had not agreed to hold it up. The Supreme Court held that the evidence was properly rejected.
It was argued, that the evidence offered did not contradict or vary any of the terms of the bill, but only proved an agreement collateral • to the written contract and cotem-poraneous with it, leaving its terms intact, but limiting the right which the law gives of presenting the bill at any time before the day of payment. Mr. Justice Grier, delivering the opinion of the court, said : “Where the operation of a contract is clearly settled by general principles of law, it is taken to be the true sense of the contracting parties. This is not only a positive rule of the common law, but it is a general principle in the construction *of contracts. Some precedents to the contrary may be found in some of our States, originating in hard cases, but they are generally overruled by the same tribunals from which they are emanated, on experiences of the evil consequences -flowing from a relaxation of, the rule. There is no ambiguity in this case which needs explanation. By the face of the bill the owner of it had a right to demand acceptance immediately, and to protest it for non-acceptance. The proof of a parol contract that it should not be presentable till a distant, uncertain and undefined period, tended to alter and vary, in a very material degree, its operation and effect.”
In Warren v. Wheeler, 8 Metc. R. 97, a written contract to pay for goods, on which the action was founded, expressed no time of payment, so that, by legal construction, the payment was to be made on demand. It was held by the Supreme Court of Massachusetts, that the defendant could not give evidence of a cotemporaneous parol agreement that payment should be made at a subsequent time, which had not arrived when the action was commenced. In Howe v. Merrill, 5 Cush. R. 80, the same principle was applied to the case of an endorsement in blank. The name of a party appeared on a note as’second endorser, in regular form, and it was held that he could not, by parol evidence of an agreement to that effect, be converted into a guarantor. Shaw, C. J., said: “It is no morepompetent to alter and vary the legal effect”of a written instrument by parol evidence, than to alter and change its express terms.” The same was held in reference to the contract of an endorser in Prescott Bank v. Caverly, 7 Gray R. 217, and in Bigelow v. Colton, 13 Ibid. 309. In Essex Bank v. Edmonds, 12 Gray R. 273, a person, not the payee, wrote his name on the back of a negotiable promissory note before delivery, the legal ^’import of which was held to be, that he was liable as promisor, and not as endorser. And it was held, that evidence of cotemporaneous parol agreement was not admissible to change the character of the liability. Under certain circumstances, which appear not .to be well defined, the endorsement of a negotiable note by a person other than the payee is regarded in Massachusetts as having no fixed and certain legal import, and accordingly, in such cases, parol evidence is allowed to show the actual agreement. Ibid, and cases cited. See Rey & al. v. Simpson, 22 How. U. S. R. 341.
In Thompson v. Ketcham, 8 John. R. 190, the promissory note, on which the action was brought, specified no time of payment, so that, by legal construction and intendment, it was payable immediately'. It was held, that parol evidence was not admissible to contradict this legal intendment by showing that a different time of payment was agreed upon. In Ea Earge v. Rickert, S Wend. R. 187, there was a written contract to deliver certain portable articles to the plaintiff, but no place of delivery' was specified. It was held that, by construction of law, the place of delivery was the residence of the plaintiff, and that evidence was not admissible to prove a cotempo-raneous agreement fixing a different place of delivery. The court said: “The written contract of the parties, therefore, according to the established rules of construction, having settled their rights and duties as to the place at -which these articles were to be delivered, it was improper to admit parol evidence of their declarations before or at the time of the giving of the receipt, to show that a different place had been agreed upon. The written contract was the only legal evidence as to the intentions of the parties up to the time it was executed. All previous arrangements were merged in that. A written contract *cannot be varied by parol, and where the legal construction and effect of *593 an instrument are well settled, it is varying the instrument to show that the parties intended something else, as much as it would be to prove that the terms used were not in accordance with the jrrevious agreement.” The same principle is applied in New York to the case of an endorsement in blank. And no distinction is made in the cases of what are called “irregular endorsements,” (by a person other than the payee), because, according to the late decisions in that State, these have a certain, definite and precise import. Bank of Albion v. Smith, 27 Barb. R. 489, and cases cited; Spier v. Gilmore, 1 Comst. R. 321; Brown v. Curtis, 2 Ibid 225.
The same doctrine had been applied to endorsements in blank by the courts of other States. Many of the cases are collected in 2 Parsons on Notes and Bills 520. See also Barry v. Moore, 3 N. Hamp. R. 132; Hightower v. Ivy, 2 Porter’s R. 308; Heaverin v. Donnell, 7 Smedes & Marsh. R. 244; Park v. Thomas, 13 Ib. 11; Heath v. Van Cott, 9 Wisconsin R. 516.
The case of Watson v. Hurt, 6 Gratt. 633, proceeded on the same principle. That was the case of an endorsement in blank by a person other than the payee, which was held to import a guaranty of payment, according to the terms of the note on which the endorsement was made. It was held, that the contract thus imported could not be varied by evidence of a cotemporaneous parol agreement that the endorser was to be bound on different terms as to the time of the payment.
In Renner v. Bank of Columbia, 9 Wheat. R. 591, evidence of a local custom was admitted to explain the contract of the endorser as to the days of grace. And as between an endorser and his immediate endorsee, it has sometimes been held, that evidence may be received of a '’‘'parol agreement, at the time of the endorsement, to dispense with demand or notice. Brent’s ex’or v. Bank of Metropolis, 1 Peter’s R. 89; Story Prom. Notes, § 148.
The case in 9 Wheaton is an application, or was understood and intended to be, of a familiar rule in reference to mercantile contracts, that they are to be construed with reference to known and established usages. The soundness of the other class of cases has been questioned. They have been thought to conflict with the principle that the legal import of an endorsement cannot be varied by parol evidence. Stubbs v. Goodall, 4 Georgia R. 106; Bank of Albion v. Smith, 27 Barb. R. 489. But it is not necessary for me to express any opinion on this subject.
I do not think it necessary to examine in detail the cases cited by the counsel for the defendant. Some of them are undoubtedly inconsistent with the cases to which I have referred, and must be considered as overruled by them.
I am of opinion that the judgment should be reversed.
The other judges concurred in the opinion of Joynes, J.
The judgment was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the said Circuit Court erred in refusing to give to the jury the instruction moved by the plaintiffs in error. Therefore it is considered by the court, that the said jugment be reversed and annulled; and that the plaintiffs in error recover against the defendant in error their costs by them expended in the- prosecution of their suit of supersedeas aforesaid here. And the cause is remanded to the said Circuit Court for a
new trial to be had therein, upon which the said instruction shall be given to the jury, if it shall be again asked upon *a like state of facts. But this order is to be without prejudice to the question whether the defendant Poster is or is not liable on his endorsement for more than the amount of the bills in Confederate notes, according to the value of such notes at the date of the endorsement, as stated in said instruction ; upon which question it is not necessary, in this case, to express an opinion.
Which is ordered to be certified to said Circuit Court.