# Richmond.

SOLENBERGER v. GILBERT'S ADM'R & ALS.

APRIL 10th, 1890.

1. PAROL EVIDENCE—*Written instruments—Delivery.*—To establish the fact that there was no valid delivery of a note sued on, or a delivery thereof for a special purpose only, parol evidence is admissible.
2. IDEM—*Failure of purpose.*—When such evidence, in connection with written, shows that the purpose for which a note was delivered failed, there is no liability therefor on its maker.

Argued at Staunton.    Decided at Richmond.

Appeal from decree of circuit court of Frederick county, rendered July 18, 1887, in a suit wherein E. H. Boyd, administrator of W. T. Gilbert, deceased, was complainant, and the appellants, Barbara A. Solenberger and N. W. Solenberger, trustee, were defendants.    Opinion states the case.

*Holmes Conrad,* for the appellants.

*Barton & Boyd,* for the appellee.

RICHARDSON, J., delivered the opinion of the court.

The object of this suit was to subject the separate real estate of Barbara A. Solenberger, the wife of N. W. Solenberger, to the payment of a certain debt mentioned in the bill and alleged to be due from her to the estate of the plaintiff's decedent.

The bill alleges that on the 5th day of July, 1886, Barbara A. Solenberger executed to N. W. Solenberger a note, of which the following is a copy:

" $1,350 00.                    WINCHESTER, VA., July —, 1886.

" One hundred and twenty days after date I promise to pay to N. W. Solenberger, or order, thirteen hundred and fifty dollars for value received, negotiable and payable at the Union Bank of Winchester; and we, the drawer and endorser, each hereby waive the benefit of the homestead exemption as to this debt.

B. A. SOLENBERGER.

" Credit the drawer."

It is further alleged that before the maturity of this note the said N. W. Solenberger endorsed his name on the back of the same, and for value received delivered it to W. T. Gilbert; that at the maturity of said note, according to its tenor and effect, it was presented for payment, and payment thereof demanded at the Union bank of Winchester, but that the same was not paid, and that no part thereof has ever at any time been paid either to W. T. Gilbert in his lifetime or to the complainant since his death.

And the bill further alleges that " although the said note appears on its face to have become due in one hundred and twenty days from its execution—to-wit, on the 5th day of November, 1886—yet complainant has found among the papers of his decedent, accompanying said note and obviously intended as a modification of the terms thereof, the following paper ":

" WINCHESTER, VA., July 5th, 1886.

" This is to show that Barbara Solenberger this day has signed a note for thirteen hundred and fifty dollars ($1,350), negotiable and payable at the Union Bank of Winchester.    It is agreed by the undersigned that the said note is to be renewed or carried by me for three years, if the said Barbara Solenberger should need that time to pay it in, or a less time; the interest to be paid by said B. Solenberger at every renewal; and to above I agree.                    W. T. GILBERT."

The bill then alleges that within the said paper was the signature thereto, in the handwriting of W. T. Gilbert, but that complainant supposes this paper to be a copy of the original, probably delivered at the time of its execution to Mr. or Mrs. Solenberger. And the complainant further says: "At any rate your orator believes. that said paper represents the understanding which existed about the payment of the note between the parties thereto, and he has accordingly adopted and acted on it." And the bill alleges that at the end of the one hundred and twenty days the note was not renewed as it was agreed that it should be, and the interest was not paid thereon, although the said Barbara A. Solenberger was by said Gilbert called on so to do in compliance with her said contract, and that since the death of said Gilbert, which occurred about the 2d of March, 1887, the complainant had called on Mrs. Solenberger to renew said note and to pay said interest, but that she failed and declined to do so. And the bill alleges and charges that the effect of the failure to so renew said note and to pay the interest thereon, is to release the estate of said Gilbert from the modification of the obligation of said note, as the same is set forth in the said paper, and to make the whole of said sum of $1,350 00 due and payable, according to the obligation on the face of said note.

The bill then alleges that said Barbara A. Solenberger is a married woman, the wife of N. W. Solenberger; that she is seized and possessed in her own right, and as her separate estate, of considerable property, of which the following constitutes a part: A house and lot on the corner of Cameron and Clarke streets, in Winchester, assessed for taxation at $1,600 00; and a tract of land, with improvements thereon, situated about five miles southwest from Winchester, containing 1,707 acres, which is held by N. W. Solenberger for her sole and separate use. And charging that the true amount, due by said Barbara A. Solenberger to the estate of W. T. Gilbert, deceased, is the sum of $1,350 00, with interest

thereon from the 5th day of November, 1886, the prayer is that the said real property of Barbara A. Solenberger is rented out, and from the proceeds the said sum of $1,350 00, with interest as aforesaid be decreed to be paid to the complainant; that Barbara A. Solenberger, and N. W. Solenberger in his own right and as trustee, be compelled to answer the bill, but not on oath; and for general relief.

The cause having been regularly entered, and neither of the defendants having appeared, the bill was taken for confessed as to them, and at the November term, 1887, a decree was entered in the cause holding that the amount due by said Barbara A. Solenberger to E. Holmes Boyd, administrator of W. T. Gilbert, deceased, is the said sum of $1,350 00, with interest from the 8th day of November, 1886, and that the real estate of Barbara A. Solenberger is liable therefor, and directing said real property to be rented out for the satisfaction of said debt, unless the said Barbara A. Solenberger, or some one for her, should within thirty days from the rising of the court, pay said sum and interest and costs to said administrator.

Percy C. Gore, sheriff of Frederick county, was directed to execute this decree, and he was taking steps to do so when, on the 4th of February, 1889, Mrs. Barbara A. Solenberger presented to the judge of said circuit court what she styles her petition and cross bill, which she prays may also be read as her demurrer and plea and answer to the original bill of Gilbert's administrator against her and her husband, N. W. Solenberger; in which, after denying the material allegations of the original bill intended and relied upon to charge her separate estate with the payment of the note in question, and after giving her version of the circumstances under which she executed said note for $1,350 00, she prays that E. Holmes Boyd, administrator of W. T. Gilbert, deceased, and Percy C. Gore, sheriff as aforesaid, be made parties and required to answer, but not under oath; that the decree of November, 1887, be reheard and set aside; that an injunction be granted

restraining said sheriff from executing said decree by renting
out petitioner's said property; and for general relief.

The injunction was awarded as prayed for; and at the March
term of said circuit court the petition and cross bill was filed,
with the leave of court, and the defendant therein, the plaintiff
in the original bill, demurred to and answered the same, the
answer being in substance a repetition of the averments in the
original bill.

At the hearing in June, 1889, a decree was rendered dis-
solving the injunction awarded on the petition of Barbara A.
Solenberger on the 4th of February, 1889, and again directing
the sheriff of Frederick county to proceed to rent out the said
real property of the defendant, Barbara A. Solenberger. And
from that decree the case is here on appeal.

In the light of the facts disclosed by the record, the real
inquiry here is as to what was the object and purpose for which
the note in suit was made and delivered by Mrs. Barbara A.
Solenberger. In other words, was the note ever delivered to
W. T. Gilbert for value, as is alleged in the plaintiff's bill?

In order to a proper solution of this question, we must look
not alone to the instrument itself, but to it in connection with
the contemporaneous writing signed by W. T. Gilbert, and
also to any competent parol evidence which is not obnoxious
to the rule which forbids the reception of such evidence to
contradict or vary the terms of a written instrument. For
convenience the note and the contemporaneous writing are
here reproduced:

" $1,350 00.                    WINCHESTER, VA., July —, 1886.

" One hundred and twenty days after date I promise to pay
to N. W. Solenberger, or order, thirteen hundred and fifty
dollars, for value received, negotiable and payable at the Union
Bank of Winchester; and we, the drawer and endorser, each
hereby waive the benefit of the homestead exemption as to
this debt.                    B. A. SOLENBERGER."

" *Credit the drawer.*"

" WINCHESTER, VA., July 5th, 1886.

" This is to show that Barbara Solenberger this day has signed a note for thirteen hundred and fifty dollars ($1,350 00), negotiable and payable at the Union Bank of Winchester. It is agreed by the undersigned that the said note is to be renewed, or carried by me for three years if the said Barbara Solenberger should need that time to pay it in, or a less time. The interest to be paid by said B. Solenberger at every renewal, and to above I agree.                    W. T. GILBERT."

The original bill of the plaintiff, the appellee here, sets forth both the note and the paper signed by W. T. Gilbert; and as to the latter, the bill avers that " although the said note appears on its face to have become due in one hundred and twenty days from its execution, to-wit: on the 5th of November, 1886, yet complainant has found among the papers of his decedent, accompanying said note, and obviously intended as a modification of the terms thereof, the following paper. * * * Your orator believes that said paper represents the understanding which existed about the payment of the note between the parties thereto, and he has accordingly adopted and acted on it."

Thus the complainant unequivocally admits that the two papers together constitute the contract between the parties. But it is insisted that the contract so to be arrived at, properly construed, is a promise by Mrs. Solenberger to pay to W. T. Gilbert, as the holder for value of said note, the amount therein stated; and that such promise became absolute, and that present cause of action arose thereon, upon the failure of Mrs. Solenberger to pay the interest thereon at the maturity of the note, one hundred and twenty days after its date.

Tested by the terms of the contract, as arrived at by reading the note in connection with the contemporaneous writing signed by W. T. Gilbert, it is obvious that the conclusions thus sought by the plaintiff, the appellee here, to be deduced from the contract, are fallacious and cannot be upheld.

1st. It is not true, as alleged, that the contract amounts to

a promise on the part of Mrs. Solenberger to pay W. T. Gilbert, as the holder of the note for value. The note and the paper signed by Gilbert were, it is true, found among the papers of Gilbert, after his death; but the latter paper, so far from evincing a promise by Mrs. Solenberger to pay Gilbert the amount of the note, actually repels any such idea, and seems to have been intended to guard against any such misuse of the note as that which is attempted. The paper describes the note, but asserts no ownership thereof by Gilbert; nor is the note in any way referred to as a note held by, owned, or endorsed to Gilbert. Surely, if Gilbert held any such claim in or to the note, he would hardly have failed to assert it in a paper drawn and signed by him upon the demand of Mrs. Solenberger, and obviously for her protection, and in which he expressly agrees to *renew and carry* the note for three years. In point of fact the language employed by Gilbert is just such as would naturally be resorted to by one having no such interest in the note as that of holder for value, but one who, for reasons hereafter to be explained, was binding himself to endorse the note, and to continue his endorsement for the period named.

It is manifest that the real purpose and intent of the parties to the transaction was to make a note to be discounted in bank. Hence the note is drawn " negotiable and payable at the Union Bank of Winchester;" and the paper signed by Gilbert is an express promise by him to renew or carry that note for three years. These are terms which are used, as common experience teaches us, only in reference to paper in bank, and are not in general applicable to other than commercial paper, strictly speaking.

Moreover, it is a significant fact that the note itself is blank as to date, thus evincing that it was intended to be discounted at bank, and that the date of the note would be inserted as of the date of its acceptance by the bank, and that the note was intrusted to Gilbert for the purpose of having it discounted at

said bank, he obligating himself at the same time to renew it at the expiration of each period of one hundred and twenty days, and thus to carry it for three years.

Again, if, as alleged in the plaintiff's bill, this note was endorsed by the payee, N. W. Solenberger, who, for value received, delivered it to W. T. Gilbert, then the note became absolutely his property; and if the object of the paper contemporaneously executed by Gilbert was merely to operate as an extension of time to Mrs. Solenberger in which to pay the note, then Gilbert would have framed his promise and agreement to that end, and would not have bound himself by the inconsistent agreement into which he did enter.

2d. Nor is it true that Mrs. Solenberger's promise to pay becomes absolute upon her failure to pay the interest at the expiration of one hundred and twenty days from the time she signed the note. The insistence by counsel for the appellee is that Gilber's promise to renew or carry, the note for three years was conditioned upon Mrs. Solenberger's paying the interest. No such conclusion can be justly drawn from the agreement signed by Gilbert. See the clear and explicit language of that instrument: "It is agreed by the undersigned that the said note is to be renewed, or carried, by me for three years, if the said Barbara Solenberger should need that time to pay it in, or a less time." The sentence is complete, and it perfectly expresses an unconditional promise. Then the instrument proceeds: "The interest to be paid by said B. Solenberger at every renewal, and to above I agree." This last provision is equally separate and distinct. Obviously, if the payment of interest had been intended as the consideration upon which Gilbert was to renew the note, then the paper would have read that Gilbert agrees to renew for the prescribed period of three years, provided Mrs. Solenberger pays the interest at each renewal. But the paper does not so read, and obviously it was not so intended. Yet the bill alleges, "Your orator is advised, and so charges, that the effect of the failure

to so renew the said note and pay the interest thereon is to release the estate of said Gilbert from the modification of the obligation of said note, as the same is set forth in said paper." The logical absurdity of any such contention lies in the fact that the obligation was upon Gilbert to renew the notes, and not upon Mrs. Solenberger; so that the interest could not have been paid unless the note was renewed by Gilbert at the expiration of every hundred and twenty days, as he had bound himself to do—it being admitted that the note was never discounted at bank, much less renewed. Gilbert's promise to renew, or carry, the note for three years, and thus extend the period for payment, was for the benefit of Mrs. Solenberger; and having a right to that time, she insists upon having it, but it has been denied her. Under that provision in the paper signed by Gilbert, no cause of action could arise on the note, in any event, until July, 1889. Yet this suit was brought, to enforce said note as a liability upon her separate estate, to August rules, 1887. It is clear that no cause of action existed against her, and the bill should have been dismissed on demurrer. *Potomac Man. Co. v. Evans*, 84 Va., 717.

As before stated, it is averred in the plaintiff's bill that N. W. Solenberger, the payer, endorsed his name on the back of the note, and for value received delivered it to W. T. Gilbert. This averment is expressly denied by Mrs. Solenberger in her answer; and, in the light of the facts disclosed by the record, her answer would have been conclusive of the case in her favor had not the plaintiff in his bill waived an answer under oath.

But to sustain this most essential averment in the bill, the plaintiff, on the 16th of April, 1889, took the deposition of Walter E. Gilbert, son of said W. T. Gilbert, deceased; whereupon the defendant, Barbara A. Solenberger, on the 17th of May, 1889, took the deposition of German Smith as rebutting testimony. But the plaintiff excepted to the deposition of German Smith on the ground that his testimony tends to con-

tradict or vary the written contract.   Without more it might
be sufficient to reply to this objection that whatever it was com-
petent for the plaintiff to prove in aid of the contract sought
to be enforced, it was equally competent for the defendant to
rebut.   But, however this may be, it is perfectly clear that the
evidence objected to was not intended to contradict or vary the
terms of the written contract, nor does it have any such effect;
on the contrary, the only object of the evidence, and its only
effect, is to show the object of the parties in executing the
instrument, and that it is sought to be perverted to another and
different purpose.   In other words, in this and like cases parol
evidence tending to prove independent facts is admissible;
which facts, if established, avoids the effect of the written
agreement by facts *dehors* the instrument, but not tending to
contradict or vary it.   Hence, in the present case, it was com-
petent to show by parol testimony that the condition upon
which the note in question was signed by Mrs. Solenberger
was not performed by Gilbert.   For " if a document be signed
by one party in consequence of a parol agreement by the other
party, which parol agreement is not performed, then it follows,
from what has been said, that the party so signing, may set up,
as against the other party, the non-performance of the parol
agreement."   2 Wharton's Evidence, sec. 928.

" So it might be shown that the endorsement was upon trust
for some special purpose, as from principal to an agent, to ena-
ble him to use the instrument in some particular way, or for
collection merely, or as an escrow, upon an express condition
that has not been complied with."   1 Dan'l Neg. Inst., sec.
721.

In *Pym* v. *Campbell*, 88 E. C. L. R., 370, there was an agree-
ment in writing to purchase shares in an invention, which was
signed by all the parties and left with plaintiff; but Campbell
signed upon the express condition that it should not operate
as his agreement until Abernathie had approved of the inven-
tion.   Abernathie did not approve of it.   Lord Campbell said:

"It was proved that before the paper was signed, it was explained to plaintiff that defendants did not intend the paper to be an agreement till Abernathie had approved it; that the paper was signed only because it was not convenient for defendants to remain; that plaintiff assented to and received the paper on those terms. That being proved, there was no argument." And in *Hall* v. *Featherstone*, 3 Hurl. & Norm., 284, it was held that where the drawer of a bill, which he endorsed in blank, delivered it to W. to get it discounted for him, and W. went off with the bill promising to get and bring him the money, but never returned with the bill or the money, and the drawer never heard of the bill until called upon by H. to pay it, it was held that H. must prove that he gave value in order to recover on the bill. It will be observed that in this case the rule was applied against H., who was an innocent holder, without notice, while in the present case the same state of facts was true as to Gilbert, who had full notice of and participated in the whole transaction. There is, therefore, no ground upon which he could be exempted from the operation of the rule. To permit the enforcement of the note in question against Mrs. Solenberger would be to sanction a manifestly fraudulent perversion of the instrument from the purpose for which it was intended.

In *Turner* v. *Lucas*, 13 Gratt., 705, Judge Allen said: "The fraud which will let in such proof must be fraud in the procurement of the instrument, which goes to its validity or some breach of confidence in using a paper delivered for one purpose and fraudulently perverting it to another."

And in delivering the opinion of the supreme court of the United States in *Bink* v. *Bink*, 8 Otto, 514, Mr. Justice Field said: "The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties; that cannot be qualified or varied from its natural import, but must speak for itself. The rule does not prohibit an inquiry into the object of the parties in executing

and receiving the instrument." And in an able and exhaustive opinion in *Nash* v. *Fugate*, 32 Gratt., 595, after collating and reviewing all the authorities upon the subject, Judge Staples says: "Indeed it seems to be well settled that whatever relates to the point of execution, whether tending to show the time of delivery, or that the delivery is in the nature of an escrow, or to disprove it altogether, may be established by parol."

In the light of the principles held by these authorities, how stands the present case? Prior to the transactions under investigation, N. W. Solenberger, the husband of Mrs. Barbara A. Solenberger, was the holder of a negotiable note made by Alex. McClure, of Philadelphia, and W. T. Gilbert and German Smith became endorsers on this note to enable N. W. Solenberger to get the money thereon. After several renewals the note went to protest, and Smith, the second endorser, declined to further endorse the note, N. W. Solenberger being insolvent. The bank recovered a judgment on the note, which judgment it seems was satisfied out of W. T. Gilbert's estate after his death. But before Gilbert's death, he being first endorser, and N. W. Solenberger being insolvent, it stood him in hand to get some indemnity against the loss which had befallen him as endorser for N. W. Solenberger. In this state of affairs Mrs. Solenberger, who had received no benefit from the note so endorsed for her husband by Gilbert and Smith, and who was in no way bound therefor, was induced to execute the note in question payable to her husband, to whom she owed nothing, it being agreed and understood that the same should be endorsed on the back thereof by her said husband and delivered to Gilbert, who was also to endorse it and get it discounted at the Union Bank of Winchester, and thus to be substituted for said original debt held by the bank against her husband and his endorsers, Gilbert and Smith. But before executing, as a matter of grace and favor, her note to be endorsed as aforesaid and discounted at said bank, and substituted for said original debt of her husband, for which

Gilbert was bound as first endorser, she demanded of Gilbert the terms expressed in said paper executed by him on the same day she signed the note, to-wit: on the 5th ot July, 1886. Such being the circumstances under which the note was executed, as shown by the record, it only remains to notice briefly the evidence of the only two witnesses whose depositions were taken.

Walter E. Gilbert, a son of W. T. Gilbert, and who was a boy sixteen years of age at the date of the transactions about which he testifies, was examined on behalf of the plaintiff, the appellee here.   He sets out by stating that he knows the circumstances under which the note was executed and delivered; that it was executed in his father's office in the presence of Mr. and Mrs. Solenberger, W. T. Gilbert, and himself, and that the original debt was for money borrowed by N. W. Solenberger from his father, W. T. Gilbert.   He states that he remembers the execution of the paper signed by his father, and that it was executed at the request of the Solenbergers; that he heard and understood the terms upon which the settlement was finally made; that after Mrs. Solenberger had executed the note, it was delivered to W. T. Gilbert, who kept it among his valuable papers, and that he afterwards deposited it in bank. He professes to remember, and he details a conversation between German Smith and W. T. Gilbert in the office of Barton & Boyd, and repeats statements made, as he says, by Smith. But on cross-examination, this witness admits that he did not see the note executed, and don't know whether it was executed before the parties met in his father's office or afterward; that in fact he never saw the note at all, until after it was executed, and he thinks he saw it in less than three days afterward, but won't even swear to that.   That as to the object of the visit to his father's office he knows nothing except what his father told him, and his own supposition.   As to the paper remembered by him to have been executed by his father at the request of the Solenbergers, he now admits that he knew of it by reason

of having afterward seen a duplicate of it, which his father kept. And he further admits that he did not see the note delivered to his father at all. Thus, upon cross-examination, it is made to appear that Walter E. Gilbert knew very little, if anything, of the transactions about which he so freely testified in his examination in chief. On the other hand, German Smith, who had been one of the endorsers of the note evidencing the original debt, and who was introduced on behalf of the defendant, the appellant here, shows clearly that the original debt was not, as Walter E. Gilbert says it was, for money borrowed by N. W. Solenberger from W. T. Gilbert, but that said Solenberger held the note of Alex. McClure, of Philadelphia, and that W. T. Gilbert had endorsed it to enable Solenberger to get the money on it from the bank. That on the notes given in subsequent renewal, both Gilbert and Smith were endorsers, and that Smith refused to continue his endorsement, and as he states: "Hence this substitute, which was submitted, and not accepted."

The witness, Smith, does not pretend to have been present at the execution of the note in question; but he clearly and positively states that "the matter was determined upon in my office, between N. W. Solenberger, W. T. Gilbert, and myself; that the note was executed and given to W. T. Gilbert for discount by the Union Bank." And he further distinctly and positively states that Walter E. Gilbert was not present at any conversation between W. T. Gilbert and himself, in regard to the matter; and that the note executed by Mrs. Solenberger was intended to take the place of the original note in bank, and with that view was signed by Mrs. Solenberger, but with the expectation of it being accepted by the bank to the satisfaction of all concerned. And he further says that the note sued on was not intended to take the place of the debt for which N. W. Solenberger was bound to W. T. Gilbert "only under certain conditions, that the bank would accept it, and.

agree to its renewal, as per the understanding in the written contract signed by W. T. Gilbert dated July 5th, 1886."

In the light of the case made by the pleadings and the law applicable thereto, two things are clear—first, that the rule which forbids the reception of parol testimony to contradict or vary the terms of a deed, or other writing, is not infringed by the introduction of the evidence objected to, as that evidence does not tend to contradict or vary the terms of the contract between the parties, but merely to show that there has been no valid delivery of the note in suit; and, second, that the evidence, together with the written contract, clearly establishes that the note was not delivered to W. T. Gilbert for value, and that the purpose for which it was executed having failed, there is no liability therefor upon the appellant, Mrs. Barbara A. Solenberger. And for these reasons the decree appealed from must be reversed and annulled, and such decree entered here as should have been entered by the court below.

FAUNTLEROY, J., dissented.

DECREE REVERSED.