Syllabus.

# Richmond.

## T. A. WEBB, RECEIVER OF BANK OF VIRGILINA, V. J. W. PLEASANTS.

March 18, 1926.

Absent, West, J.

1. BILLS, NOTES AND CHECKS—*Accommodation Maker—Maker of Accommodation Note for the Benefit of a Bank not Liable to the Bank on the Note—Receiver in no Better Position than Bank—Case at Bar.*—A cashier of a bank had long been misappropriating the bank's funds and had covered up his defalcations by various devices. The cashier induced defendant, his brother-in-law, who knew nothing of his defalcations, to give the bank his accommodation note for $5,000.00 to be used by the bank as collateral in order that the bank might have cash available for other loans to its customers. The note was used accordingly and the cashier issued to defendant on behalf of the bank a certificate of deposit for $5,000.00 but made no record of the issuance of this certificate on the books of the bank.

   *Held:* That as defendant was free from any complicity in the fraud practiced by the cashier and was ignorant thereof, and as the note was a purely accommodation note for which defendant received no value whatever, as between the bank and defendant, the bank would have no standing in court in an action against defendant to recover on the note; and the receiver of the bank, suing for the benefit of the creditors of the bank, stood in no better position than the bank itself.

2. BILLS, NOTES AND CHECKS—*Accommodation Paper—Accommodation Note Given to Bank to be Used as Collateral—Parol Evidence—Case at Bar.*—In the instant case defendant gave his accommodation note to a bank to be used by the bank as collateral for a loan to the bank and received a certificate of deposit from the cashier of the bank. Defendant had a right to give such a note to be used solely for the purpose for which this note was given, and which was void if used for any other purpose; and such conditional delivery for such special purpose can be proven by parol.

3. BILLS, NOTES AND CHECKS—*Accommodation Paper—Validity—Purpose for which Note was Given—Case at Bar.*—In the instant case the note sued on was executed for use as collateral by a bank and for no other purpose. It was used for this purpose, and as long as it was being

so used it had validity, but when the note for which it was held as
security was paid, and the accommodation note came into the pos-
session of the bank and as long as it remained there, it was a scrap
of paper without value.

Error to a judgment of the Circuit Court of Halifax
county, in a proceeding by motion for a judgment for
money. Judgment for plaintiff. Defendant assigns
error.

*Affirmed.*

The opinion states the case.

*John Martin* and *M. B. Booker*, for the plaintiff in
error.

*Wm. M. Tuck* and *Malcolm K. Harris*, for the
defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This was a notice of motion for judgment on a note
of $5,000 instituted by T. A. Webb, receiver of Bank
of Virgilina, against J. W. Pleasants, maker thereof.
There was a verdict and judgment for the defendant
and from this judgment a writ of error was allowed to
this court.

The bank failed in December, 1923, the plaintiff in
error was appointed receiver therefor on December
11, 1923, and among the apparent assets of the bank
was found the note sued on, bearing date August 28,
1923, payable to the bank four months after date,
purporting to be signed by J. W. Pleasants, and bear-
ing the endorsements "Pleasants and Co."

The evidence disclosed that T. C. Pool, cashier of
the bank, and a brother-in-law of Pleasants, had long
been misappropriating the bank's funds, and that he

had covered up these defalcations by various devices. Pleasants knew nothing of this, and he was induced by Pool, in the spring of 1923, to give the bank his accommodation note for $5,000, for the purpose, as Pool told Pleasants, that the bank, which had made large loans to tobacco growers, might use it as collateral, with which to borrow money, or for discount, in order that it might have cash available for other loans to its customers.   The original note which was given for this purpose, and the renewal thereof of August 28, 1923, were used accordingly, but Pool issued to Pleasants, on behalf of the bank, a certificate of deposit for $5,000, but made no record of the issuance of this certificate on the books of the bank. It thus appeared that the bank had, as an asset, the note of $5,000, when, as a matter of fact, if the certificate of deposit had been properly entered on the books of the bank, such entry would have offset the note and the true situation would have appeared.

It was clear, indeed it was undisputed, that Pleasants knew nothing of the failure of Pool to make proper entry of the certificate of deposit, that the note was an accommodation note purely, and that it was given for a special purpose only, to-wit: To be used as collateral with some other bank to raise money for use of the Virgilina bank. It was used for this purpose, and at the time of the failure of the Bank of Virgilina it was hypothecated with the Chatham and Phoenix Bank of New York as security for a note due by the Bank of Virgilina to the New York bank, and after the appointment of the receiver it was paid by application of a deposit in the bank, and thereupon the note was returned along with other collateral to the receiver.

The receiver, treating the Pleasants note as an

asset of the bank, brought this action to recover the value of the note for the benefit of the depositors and other creditors of the bank.

[1] It is of course true that as Pleasants was free from any complicity in the fraud practiced by Pool, and was ignorant thereof, and as the note was a purely accommodation note for which Pleasants received no value whatever, as between the bank and Pleasants, unquestionably the bank would have no standing in court in an action against Pleasants to recover on the note.

Under the facts in this case we do not think the receiver, suing for the benefit of the creditors of the bank, stands in any better position than the bank would stand. If Pleasants had been party to the fraud, or if he had negligently done anything which kept an insolvent institution going to the detriment of depositors and creditors, the situation would have been different. He gave to the bank his accommodation note for a specific purpose and took a certificate of deposit for an equal amount. If Pool, the cashier, had not fraudulently concealed the issuance of this certificate of deposit, but had entered it on the bank's books, as Pleasants had every right to believe he would do, there could have been no misapprehension on the part of depositors as to the true situation, so far as this particular transaction was concerned.

Undoubtedly, if the note for which this $5,000 was hypothecated as collateral, due the Chatham and Phoenix Bank of New York, had not been paid, Pleasants would have been liable for the full value of the note to the New York bank, for it was given for this very purpose—that is, to use as collateral to borrow money, and Pleasants not only does not deny, but admits this.

[2] That Pleasants had a right to give such a note to be used solely for the purpose for which this note was given, and which was void if used for any other purpose, and that such conditional delivery for such special purpose can be proven by parol, we think, is beyond question.

In *Solenberger* v. *Gilbert's Admr., et als.*, 86 Va. 778, 11 S. E. 789, it was held that parol evidence was admissible to prove that a note sued on was delivered for a special purpose only.

In *Towner* v. *Lucas' Executor*, 13 Gratt. (54 Va.), at page 716, Judge Allen, speaking of one of the exceptions to the parol evidence rule, said that oral evidence was admissible where there was "some breach of confidence in using a paper delivered for one purpose and fraudulently perverting it to another. In such case the oral evidence tends to prove the independent facts, which, if established, avoid the effect of a written agreement by facts dehors the instrument but would not tend to contradict or vary it." See also *Whittaker* v. *Lane*, 128 Va. 346, 104 S. E. 252, 11 A. L. R. 1157.

[3] It was proven in the instant case, without contradiction, that the note sued on here was executed for use as collateral by the Bank of Virgilina and for no other purpose. It was used for this purpose, and as long as it was being so used it had validity, but when the note for which it was held as security was paid and it came into the possession of the Virgilina bank, and as long as it remained there, it was a scrap of paper without value.

Under the circumstances of this case the receiver stood in no better position with reference to the note than the bank did. *Chicago Title & Tr. Co.* v. *Brady*, 165 Mo. 197, 65 S. W. 303.

This was a case in which the receiver of the Globe Savings Bank of Chicago sued to recover upon six promissory notes executed and delivered to the bank for its accommodation. They were wholly without consideration, were never negotiated, but came into the hands of the receiver as assets of the bank. In addition, the facts showed that they were executed for the purpose of swelling the apparent assets of the bank. The Supreme Court of Missouri held that the trial court did not err in instructing the jury that the receiver of the bank was in no better condition to recover judgment on the notes than the bank itself. The notes being without any lawful consideration at the time of their execution, no injurious consequences to the parties or others, which might afterwards have resulted from their having been made, can constitute a valid consideration, or entitle the receiver to recover thereon. It does not appear whether or not the maker of the notes knew of the purpose for which the notes were issued—that is, to swell the apparent assets of the bank. Presumably he did, because the court further held that accommodation paper is not fraudulent or unlawful by reason of the fact that it swells the apparent assets of the person to whom it is given and that others may thereby be deceived as to the financial condition of such person.

In the instant case it is affirmatively shown that Pleasants knew nothing of any fraudulent or questionable purpose on the part of the bank. The depositors were not victims of Pleasants' wrong. He had committed none. He supposed, and had a right to suppose, that the bank records showed the whole transaction. If they had, the creditors would have had no reason to believe that this note was an asset of the value of $5,000. They were the victims of the fraud

of a trusted employee of the bank, who, in addition to the perpetration of this particular fraud, had been guilty of many others, all of which in the end resulted in the failure of the bank and the loss to its depositors.

Taking the view of the case we do, no other judgment than that arrived at could have been properly reached, hence we do not consider it necessary to discuss the specific assignments of error. The judgment of the trial court was plainly right and must be affirmed.

*Affirmed.*