## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Dianne Lynn Brooks

   v.

James L. Brooks

### November 25, 1987

By JUDGE WILLIAM H. LEDBETTER, JR.

In her bill of complaint, Mrs. Brooks seeks a divorce on the grounds of cruelty and adultery. She also requests custody of the two minor children of the marriage, child support, spousal support, and other incidental relief.

Depositions were taken on February 12, 1987, June 29, 1987, and October 27, 1987, and the transcripts, with exhibits, have been filed.

Several ore tenus hearings have been held, primarily for the purpose of determining and enforcing payments of support pendente lite, imposing restraints against harassment, and securing reimbursement of Mrs. Brooks's attorney's fees. At present, Mr. Brooks is under order to pay $600.00 each two weeks for the support of Mrs. Brooks and the children, from which Mrs. Brooks is to make the monthly mortgage payments on the home.

*Divorce*

The parties were married on November 6, 1976, and lived together until November 22, 1986. Two children were born of the marriage: J. Shannon Brooks, seven years old, and Ashley Rene Brooks, four years old.

In the early morning hours of November 22, 1986, an argument and altercation occurred, after which Mr. Brooks left the home. He returned two days later to pick up his personal effects. The parties have lived separate and apart since that date.

The circumstances of the altercation are not clear because, as might be expected, the parties offer quite different versions.

According to Mr. Brooks, he went straight home from work after his shift ended at 1:00 a.m. and was confronted by Mrs. Brooks with an array of false accusations. As he attempted to take off his clothes, he says, she attacked him. Mr. Brooks presented his sister's testimony to confirm that he sustained scratches, and another witness testified that Mrs. Brooks admitted that she had hit her husband with a lamp.

In contrast, Mrs. Brooks testified that Mr. Brooks got home after 3:00 a.m. that morning, and when she questioned him about his nocturnal activities, he struck her with his fist and with a boot. She presented a co-worker's testimony to confirm that she sustained a black eye and head bruises. She denies that she ever told anyone that she hit her husband with a lamp.

As is so often the case, this incident had no audience. Each party has attempted to verify his/her injuries sustained in the affray, but there is not the slightest corroboration of either party's version of the circumstances of the incident. In order to support her claim of cruelty, it is incumbent upon Mrs. Brooks to prove her allegations by corroborated evidence, independent of the statements of the parties. *McLaughlin v. McLaughlin*, 2 Va. App. 463 (1986).

Even if Mrs. Brooks had been successful in corroborating her contention that Mr. Brooks was the aggressor in the November 22, 1986, incident, such evidence would not be sufficient to establish the fault ground of cruelty. In Virginia, it is axiomatic that a single act of violence does not constitute cruelty unless it is particularly atrocious or attendant circumstances show that it is likely to be repeated. *DeMott v. DeMott*, 198 Va. 22 (1956). There is no such evidence in this case.

Generally, cruelty consists of successive acts of ill treatment, cumulative and augmenting by addition. *Sollie*

*v. Sollie*, 202 Va. 855 (1961). Mrs. Brooks testified that there had been other acts of ill treatment, including violence, but she gave no dates, no details, no corroboration.

Therefore, even accepting all of Mrs. Brooks's evidence as true, the evidence does not rise to the level of cruelty necessary to establish a fault ground of divorce.

Because Mrs. Brooks has not proved cruelty by a preponderance of the evidence, properly corroborated, her prayer for a divorce on ground of cruelty will be denied.

Mrs. Brooks also accuses her husband of adultery. Without reciting all of the testimony regarding these allegations, suffice it to say that Mrs. Brooks has provided no evidence of adulterous conduct. It is well established that nothing short of the carnal act itself can lay a foundation for a divorce based on adultery. *Throckmorton v. Throckmorton*, 86 Va. 786 (1890); *Painter v. Painter*, 215 Va. 418 (1975); *Coe v. Coe*, 225 Va. 616 (1983). Although adultery can be established by either direct or circumstantial evidence, the proof must be clear and convincing. *See-man v. Seeman*, 233 Va. 290 (1987). Here, despite Mr. Brooks's close association with a Ms. Rose Acors, and his rather hollow explanations of suspicious circumstances, Mrs. Brooks has presented nothing by way of proof of sexual conduct between those persons.

The court is of the opinion that Mrs. Brooks has failed to prove adultery, and her prayer for a divorce on that ground will be denied.

The evidence establishes that the parties have lived separate and apart, without interruption, for a period in excess of one year. Therefore, on motion of either party pursuant to Virginia Code Section 20-121.02, a divorce will be granted on the ground of one-year separation under Virginia Code Section 20-91(9).

Without revisiting all of Mr. Brooks's contentions regarding the reasons for his departure, the court concludes that there is nothing in the evidence to establish a fault ground of divorce in favor of Mr. Brooks. Under the circumstances of this case, a no-fault divorce will not lessen any obligation Mr. Brooks may otherwise have to support Mrs. Brooks. Virginia Code Section 20-91(9)(c). The issue of support is discussed below.

*Custody*

There are two minor children of the marriage. Shannon, seven years old, is in good health and attends public school. Ashley, age four, is severely mentally retarded. She attends special education classes and stays with Mrs. Brooks's mother much of the time so that she can be taken to and from her classes.

The children have continued to live in the marital home with their mother since Mr. Brooks's departure.

Mr. Brooks lives in a rental house in Fredericksburg, sharing rent with another man.

Mrs. Brooks has been the primary provider of care and upbringing for the children. There is no evidence of unfitness in the record. On the contrary, Mr. Brooks has filed no pleading or offered any evidence which suggests that custody should be awarded to him or that the best interests of the children would not be served by an award of custody to Mrs. Brooks.

Accordingly, considering all of the factors enumerated in Section 20-107.2(1), custody shall be awarded to Mrs. Brooks.

*Support*

Mrs. Brooks is thirty-four years old and in good health. She is employed at Signet Bank (formerly Bank of Virginia) as a customer service representative. She has worked for the bank for approximately fourteen years. She has two years of college education. She earns approximately $1,300.00 per month, or about $15,800.00 per annum. Although her parents have assisted her recently, she has no other source of income.

Mr. Brooks is thirty-five years old and in good health. He is a high school graduate with experience in machine mechanics, building maintenance, and trucking. At the time of the first depositions, he was employed at Southland in building maintenance, earning $11.50 per hour, which translates to about $2,000.00 per month and $24,000.00 per annum. In addition, he worked as a "casual driver" for Roadway. In that latter job, he was on call for local deliveries as needed and was paid on

an hourly basis for part time work. During some periods he earned as much as $500.00 a month at that job.

At the time of the last depositions, and at the time of the most recent pendente lite hearing (November 2, 1987), Mr. Brooks no longer worked for roadway and had become a driver for Southland. His salary at Southland, by virtue of the change of position, increased to $13.30 per hour, or approximately $2,300.00 per month, which translates to about $27,600.00 per annum.

Extensive evidence was taken in the depositions, and at the pendente lite hearings (not transcribed), regarding each spouse's income and expenses. In addition, Mrs. Brooks has made much of the fact that Mr. Brooks is no longer working part time for Roadway, and, she argues, the court should ignore this loss of income and base the amount of support on Mr. Brooks's earning *capacity*, rather than his actual earnings. Mrs. Brooks takes the position that Mr. Brooks voluntarily quit his part time job, or, in the alternative, that he was dismissed because of his constant unavailability for assignments. Mr. Brooks says that Roadway's need for his services has diminished because of certain factors relating to union-management contract provisions; and, he adds, he is now available less for part time work because of his promotion at Southland to full time truck operator.

Mrs. Brooks is correct that it is earning capacity, not actual earnings, that is a factor for consideration in determining support under § 20-107.1 and § 20-107.2(2). Obviously, earning capacity is ordinarily determined by reference to present earnings. This is so because in most cases, human nature drives people to demand compensation at least equal in value to the services which they are reasonably capable of performing. In some cases, of course, this thesis does not hold true. A person may have little interest in material things and be willing to earn less than his potential because he simply likes his chosen vocation. Or, he may be a malingerer or a deadbeat. When such circumstances are proven, a trial judge does not abuse his discretion by awarding support in excess of the husband's present income.

Here, there is no credible evidence that Mr. Brooks is not earnestly trying to secure employment commensurate with his abilities. He has applied for, and obtained,

a position as a driver at Southland, the compensation for which is better than in maintenance. He is qualified to drive trucks, and he has secured such a job. In the process, he has either lost or given up his part time job. In either event, the law does not require a person, in order to "work up to his potential," to maintain part time employment as a casual laborer in addition to full time employment in a position that is commensurate with his earning capabilities.

From the evidence and considering all the factors enumerated in § 20-107.1 and § 20-107.2(2), it would appear that a final decree in this cause should provide support in an aggregate amount less than $600.00 every two weeks. Provisions for spousal support and child support will be included separately.

No final decision can be made regarding the appropriate amount of spousal support or child. support until the issue of equitable distribution is resolved. *See* Virginia Code Sections 20-107.1(8), 20-107.2(2)(g), and 20-107.3(F). For the reasons explained below, the record is not sufficient to enable the court to adjudicate the issues related to equitable distribution. Until these matters are concluded, and so long as Mrs. Brooks is cooperating in bringing this litigation to an end, the pendente lite award of support will remain in effect.

*Equitable Distribution*

In the depositions, evidence has been presented with regard to the following items of property:

A jointly-owned residence, the value of which Mrs. Brooks estimates at $60,000.00, with an outstanding mortgage balance of approximately $38,000.00.

Furniture and household furnishings, almost all of which was purchased prior to the marriage according to Mrs. Brooks's uncontradicted testimony. The value of these items, individually or in the aggregate, is unknown. It would appear that all of these items are in the possession of Mrs. Brooks, but there is no evidence on this point.

Two motor vehicles, one in the possession of each party, both unencumbered, both jointly titled. There is no evidence as to value.

A 1977 power boat, titled in the name of Mr. Brooks, which Mrs. Brooks values at $3,000.00. The present location and date of acquisition of the boat are unknown.

A boat trailer, jointly owned, is valued by Mrs. Brooks at $200.00.

Three horses, two of which are at Mrs. Brooks's father's house and the other at Ms. Acors's place, which Mrs. Brooks values at $2,400.00.

A horse trailer, purchased by Mr. Brooks for $4,200.00 after the separation. The trailer appears to be in the possession of Mr. Brooks.

A diamond ring, purchased by Mr. Brooks after the separation, is valued at $500.00. Mr. Brooks testified that he bought the ring as a gift for Mrs. Brooks. Mrs. Brooks alleges that he intended to give it to Ms. Acors.

There appears to be no cash, certificates of deposit, money markets, savings accounts, IRAs, or other liquid assets.

Mrs. Brooks has a pension or retirement plan through her employer, but its value is undetermined. Mr. Brooks has no such plan.

The parties must take further evidence, by deposition or before a commissioner in chancery (to be designated by the court on motion of either party), for the purpose of inventorying, classifying, and valuing all of their property. Special heed should be paid to the procedure discussed in *Brinkley v. Brinkley*, 5 Va. App. 132 (1987). Obviously, counsel could save the parties considerable time and expense if the parties stipulated to as much of this information as possible. (In fact, if the parties can stipulate to the identity, classification and value of the properties, and neither party wishes to present further evidence relating to the factors enumerated in Section 20-107.3(E), the court would be willing to dispose of these issues upon ore tenus hearing.)

### Conclusion

Mrs. Brooks's request for a divorce on the ground of cruelty will be denied. Mrs. Brooks's request for a divorce on the ground of adultery will be denied. Mr. Brooks's assertion that a fault basis for divorce has been established in his favor is rejected. Custody is

awarded to Mrs. Brooks. Although the evidence at this point indicates that there should be some reduction in the amount of support ultimately to be paid by Mr. Brooks, no final determination can be made until there is an adjudication of the issue of equitable distribution; and meantime, the pendente lite order of support will remain in force and effect. This cause is continued for further proceedings consistent with this opinion. Counsel are admonished to complete the taking of evidence and to move the case on to conclusion.